Willard GOOLSBY, Appellant,

v.

James W. KENNEY et ux., Appellees.

No. 977.

Court of Civil Appeals of Texas, Tyler.

Dec. 30, 1976.

Rehearing Denied Jan. 31, 1977.

W. Richard Bernays, Touchstone, Bernays & Johnston, Dallas, for appellant.

Henry Stollenwerck, Dallas, for appellees.

McKAY, Justice.

This is a negligence case brought by Appellees, James W. Kenney and wife, and Intervenor, Trinity Universal Insurance Company, for property damages to the Kenney's house and personalty caused by fire which spread from a home under construction, which was being built by appellant Willard Goolsby, a home builder. Goolsby had subcontracted all of the plumbing work to an independent plumbing subcontractor, McLemore, who was a codefendant. Trial was had before a jury; and based upon the verdict, the trial court rendered judgment against Goolsby and McLemore, jointly and severally, for the sum of $77,575.03. Goolsby brings this appeal from that judgment, but McLemore has not appealed.

At the close of the evidence the trial court overruled Goolsby's motion for instructed verdict. The jury found (issue 20) that McLemore was an independent contractor, but also found (issues 13–18) that McLemore and his employees were guilty of various acts of negligence in the use of the plumber's torch which proximately caused the fire and damage to appellees. The jury also found (issue 19) that the plumbing work contracted to be done by McLemore "was inherently dangerous work", and the jury also found on issues[1] submitted over Goolsby's objections, that Goolsby failed to take certain precautions while McLemore's employees used the plumber's torch, and that such omissions constituted negligence proximately causing appellees' damage. Goolsby filed a motion for judgment notwithstanding the verdict which motion was overruled by the trial court.

Goolsby, appellant, is a home builder and on the occasion in question was in the process of building a home for the market. He had for many years employed Dennis McLemore, who does business as McLemore Plumbing Company, to do all plumbing work on the new houses under construction. The construction site in question was next to the appellees' home. At the time of the fire the Goolsby house had been framed and shingled. Fiberglass insulation was nailed to the outside walls of the house, being supported by paper backing which faced the interior of the house.

---

1. The jury found in issues 1–7 that Goolsby was negligent in failing to require a person standing by with an adequate fire extinguisher, in failing to require the use of an adequate fire fighting device, and in failing to require the use of an adequate shield between the torch and the insulation paper, and that each of these acts of negligence was a proximate cause of the damage.

On the day of the fire neither Goolsby nor McLemore was present. McLemore had sent two of his employees, Shelton and Sterling, to the house to set the bathtubs. The men found a leak, resulting from a nail hole apparently left by the carpenters in a bathroom pipe. The pipe ran vertically, coming up through the floor and through a horizontal 2″ × 4″ board and extended up between two vertical 2″ × 4″ studs. The distance between the pipe and the paper-backed insulation was approximately 1½ feet.

Shelton undertook to repair the leak. He used a saw to cut out the section of the pipe containing a nail hole and then, by using a Smith torch, a standard plumber's torch, Shelton heated the pipe, applied a flux can acid paste to the pipe so that it would draw solder into the joints and soldered a coupling or collar to the existing pipe so as to seal the pipe on both sides of the cut-out portion. This is called "sweating" the joint. In performing this operation, the flame of the torch should have been parallel to the outside wall, not directed at the insulation, and the flame should have been in direct contact with the coupling at all times. The soldering torch produces a flame approximately three inches long and a heat of approximately 2300 degrees Fahrenheit.

Shelton had been working on the pipe about a minute when there was a flash in the outside wall. When he looked up the fire covered the wall from top to bottom. Efforts of the two men to extinguish the fire with a garden hose proved futile. The flames spread to the roof and then to the Kenney house next door.

Although appellant brings 18 points of error, only points four and five are needed for the disposition of this case. Point four complains of the submission of issues pertaining to Goolsby's "alleged failure to take precautions during the use of the plumber's torch on the occasion in question, and related issues of negligence and proximate cause, for the reason that as a matter of law, there was no duty upon the part of the employer of a competent independent contractor to take such precautions." The fifth point complains of the trial court's failure to "disregard the answer of the jury . . . to the effect that the work contracted to be done by McLEMORE . . . was inherently dangerous work."

The right to recover for injuries from negligence is based upon violation of a duty, and where there is no duty there can be no negligence. *Denison Light & Power Co. v. Patton*, 105 Tex. 621, 154 S.W. 540 (1913). Thus, issues on negligence should not be submitted if the defendant owes no duty to the plaintiff. In considering the inherently dangerous work question, we must be guided by the rule that the court may disregard any jury finding which has no support in the evidence, Rule 301, T.R.C.P., and such finding must be disregarded if the evidence conclusively establishes the existence of a vital fact contrary to the jury finding. Calvert, *"No evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 361 (1960). Two related questions present themselves: with a finding that McLemore was an independent contractor was Goolsby liable for the acts of McLemore; and, secondly, was the use of the plumber's torch inherently dangerous work?

It is the well-settled law of this state that one who contracts for work to be done by an independent contractor is not liable for the negligence of the latter. *Cameron Mill & Elevator Co. v. Anderson*, 98 Tex. 156, 81 S.W. 282 (1904); *Loyd v. Herrington*, 143 Tex. 135, 182 S.W.2d 1003, 1004 (1944). This rule is subject to an important exception where the work is inherently dangerous, however skillfully done. *Cameron Mill & Elevator Co. v. Anderson*, supra. The logic behind the exception was explained in the *Cameron* case by Chief Justice Gaines, quoting Judge Dillon, 2 Dillon's Mun.Corp., par. 1029, where he said, "the party authorizing the work is justly regarded as the author of the mischief resulting from it, whether he does the work himself or lets it out by contract." 81 S.W. at 282. It has been held that an instrumentality is inherently dangerous only if it is "dangerous in its normal or non-defective

state, like explosives." *Roosth & Genecov Production Co. v. White*, 152 Tex. 619, 262 S.W.2d 99, 101 (1953). The work to be inherently dangerous must result in probable injury to third persons or the public. *Stephenville, N. & S. T. Ry. Co. v. Couch*, 56 Tex.Civ.App. 336, 121 S.W. 189 (1909, no writ). No recovery may be allowed for an injury resulting from an act or fault purely collateral to the work and which arises entirely from the wrongful act of the independent contractor or his employees. *Loyd v. Herrington*, supra, p. 1005; *Brownsville Navigation Dist. v. Valley Ice & Fuel Co.*, 313 S.W.2d 104 (Tex.Civ.App.-San Antonio 1958, no writ). The burden is on the plaintiff to show an exception to the general rule exempting the owner or employer from liability. *Wilson v. Crutcher*, 176 S.W. 625, 628 (Tex.Civ.App.-Texarkana 1915, writ ref'd); *Harris v. Farmers' & Merchants' State Bank*, 239 S.W. 1027, 1029 (Tex.Civ. App.-El Paso 1922, no writ).

The case which most directly resembles the present case is the *Brownsville Navigation* case cited supra. In that case the defendant had hired an independent contractor to remove an ice machine from a pier, which machine the defendant had bought from the tenant of the pier. While using an acetylene torch, an oxygen-fed torch much hotter than the one in the present case, the independent contractor started a fire by sparks which dropped from the torch to some unknown material below the pier, and spread to the plaintiff's property. In holding the employer not liable for the acts of the independent contractor, Judge Pope said:

> "The contract did not directly require it [the torch], and the torch was not necessarily incident to the removal of the equipment from the Pier. We doubt that the use of the acetylene torch was an inherently dangerous operation, since it was the *negligent manner of its use which resulted in the fire.*" [Emphasis added] 313 S.W.2d at 106.

After reviewing the rules cited above, the *Brownsville Navigation* case, and the evidence in the present case, we are convinced, as a matter of law, that the activities of McLemore, the plumbing subcontractor, particularly in regard to the use of the plumber's torch were not inherently dangerous such that Goolsby can be held liable for the negligence of McLemore. The testimony showed that the torch being used produced a flame of 2300 degrees Farenheit whereas an ordinary match produces a flame of 1500 degrees Farenheit, while a welding torch produces some 5000 degrees Farenheit. The torch is used for heating the pipe, burns only acetylene and produces no sparks, while a welding torch (as used in the *Brownsville Navigation* situation) cuts or melts the metal, burns the more volatile acetylene-oxygen mixture, and produces sparks and flying hot metal. From all indications the plumber's torch is much less dangerous than a welding torch which was found not to be inherently dangerous in the *Brownsville Navigation* case. Moreover, the testimony showed the plumber's torch only produced a three-inch flame, while the insulation was some 18 inches from the pipe joint which was being repaired. In performing this operation the flame of the torch should have been parallel to the outside wall, not directed at the insulation, and the flame should have been in direct contact with the coupling at all times. Several plumbers testified that the torch would have to be closer than 12 inches away from the insulation in order to pose a danger. We are convinced that only through the carelessness of the worker in handling the torch did the fire get started, and the jury so found that the worker was negligent. The appellees' principal witness, Jack Todd Alexander, Chief of the Inspection Division of the Dallas Fire Department, attached a condition to the dangerous aspects of the torch, saying that it posed a special hazard "unless certain precautions are taken to prevent that from igniting surrounding materials." One experienced plumber testified that he had started several fires with the plumber's torch, but that almost all he had either blown out or put out with his hand. The evidence reflects that the use of a plumber's torch is a common practice, and that an average of a hundred joints are

repaired in each new house that is built. Appellees cite cases where owners have been held liable for the negligent acts of independent contractors while working on public thoroughfares such as streets and sidewalks. These, however, are based upon the principle that one may not contract away a nondelegable duty and are distinguishable. *Cameron Mill & Elevator Co. v. Anderson,* supra; *Kampmann v. Rothwell,* 101 Tex. 535, 109 S.W. 1089 (1908). From the evidence we must conclude that the use of the plumber's torch was not inherently dangerous, and that the negligent manner in which it was used was the cause of the fire. We must also point out that Special Issue No. 19 [2] inquired not whether the plumber's torch was inherently dangerous, but whether "all plumbing work on the house under construction" was inherently dangerous. No showing was made that any other aspects of plumbing work was inherently dangerous; as a matter of common knowledge all plumbing work is not inherently dangerous. We sustain appellants' contention that the jury's answer to Special Issue No. 19 should have been disregarded by the trial court.

■ Appellees argue that certain sections of the City of Dallas Fire Code, introduced into evidence by them, cast a duty upon Goolsby, beyond the common law, to take precautions as to fire hazards created by McLemore. Section 16–73(n) of the code provides, "All welding or cutting operations at construction or demolition sites shall be performed in accordance with requirements of section 16–139 of this code" and requires the presence of "first aid fire extinguishing equipment" and "a competent person" during operation to "watch for sparks and hot metal and to extinguish any incidental fires which may occur." Section 16–139 is under Article VIII, generally titled "Welding and Cutting". Section 16–139(a)(1) requires a permit to be obtained "before beginning

operations in the use of oxygen-fuel gas, gaseous fuels generated from flammable liquids under pressure, or electric-arc welding or cutting, or any combination thereof." Part (a)(2) of the same section requires "every owner, operator, superintendent, foreman, or other person in charge of any operation" to acquire a permit, post a competent fire watch, and provide fire extinguishers at the site. Appellees contend that under the ordinances appellant violated a duty to obtain a permit, to provide a fire watch, and to provide fire fighting equipment, and thus should be held liable for the damage to appellees' house resulting from the negligence of McLemore. We do not agree.

The ordinances in question applied to welding and cutting" operations which as shown by the testimony cited above, is a very different operation from the soldering process involved in the use of the plumber's torch. Welding involves a much hotter flame than soldering, producing sparks and hot metal, as recognized by the Fire Code in Section 16–73(n). Welding and cutting involves a melting of the actual metal to be fused, while a plumber's torch merely heats the pipe in order to expand it so that the flux may be applied to the joint. A mask and gloves are necessary for welding while soldering with the plumber's torch does not. The plumber's torch does not involve the use of "oxygen-fuel gas" as required by 16–139(a)(1), since the acetylene is not mixed with oxygen before it is burned. The torch does not employ "gaseous fuels generated from flammable liquids under pressure." The only liquid involved is acetone, which is mixed with the acetylene gas in order to stabilize the latter. We are of the opinion from both the naming of the processes (welding and cutting) and their description that they do not apply to the soldering or "sweating" process involving the plumber's torch. Alexander himself

---

**2.** "ISSUE NO. 19

"Do you find from a preponderance of the evidence that the work contracted to be done by McLemore, to-wit, all plumbing work on the house under construction, was not 'inherently

dangerous work,' as that term is defined in this Charge?

"Answer 'It was not inherently dangerous work' or "It was inherently dangerous work'

"Answer: It was inherently dangerous work.'"

testified that it would be quite rare if plumbers ever applied for a permit before they soldered a joint, and that the fire department is not set up to send a fireman out to stand by on every joint-sweating that is done in construction in Dallas. As regards the fire extinguisher, Shelton, one of the workmen present when the fire started, testified that a $CO_2$ fire extinguisher would have been little help from the time he noticed the fire. We, therefore, hold that Goolsby cannot be held liable to appellees on the basis of the fire code ordinance.

■ Appellees also contend that Goolsby may be held liable for the damages to appellees' house based on the finding of the jury of three omissions constituting primary negligence. The jury found that Goolsby was negligent (1) in failing to require that any torch in use was used with an adequate shield, (2) in failing to provide a person standing by immediately as the torch was being used with adequate fire fighting equipment in hand, and (3) in failing to provide adequate fire fighting equipment on the premises while the torch was being used, and that each of such acts of negligence constituted a proximate cause of the damage to the Kenneys' house. We do not agree with this contention. The appellees seek to impose liability upon Goolsby for his failure to act under circumstances where the law imposes no duty upon him to act. Having subcontracted the work to an independent contractor, the duty to take such precautionary measures as may be required in the circumstances of the developing work rests upon the independent contractor whose employees are doing the work and who are subject to the control of the independent contractor, not the owner. As no duty existed in this situation, no cause of action in negligence arose; therefore, these issues should not have been submitted to the jury.

We do not reach the remaining points.

There was no appeal from the judgment against McLemore, and it, therefore, became final against him; the judgment of the trial court with respect to Goolsby is reversed, and judgment is here rendered that appellees take nothing against Goolsby.