Delcer D. KING, Appellant,

v.

Lawrence G. LOESSIN et al., Appellees.

No. 17172.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Sept. 21, 1978.

Rehearing Denied Oct. 19, 1978.

Butler, Binion, Rice, Cook & Knapp, Michael Connelly and C. Thomas Behrman, Houston, for appellant.

Mitchell, George & Belt, Terry L. Belt, Austin, for appellees.

COLEMAN, Chief Justice.

This is an appeal from an order overruling a plea of privilege. The question is whether the action of a purported agent is chargeable to the defendant where the purported agent is the employee of a corporation who was employed to do investigative work for the defendant. The plaintiff asserts that a trespass was committed in the county of suit which authorized venue in that county under Subdivision 9 of Article 1995, VATS. The judgment will be affirmed.

Delcer King, appellant, contracted with Smith Protective Services, Inc. to investigate a number of his competitors in the equipment business. Smith's employee, Thompson, along with another employee burglarized the offices of appellee in order to obtain certain sales invoices. Appellee sued Smith Protective Services, Inc., Cal Meyers, the investigations manager for Smith, and appellant, King, for damages incurred as a result of the alleged break-in. King filed his plea of privilege to be sued in his county of residence. Appellee, Loessin, filed a Controverting Plea and incorporated his original petition into the pleading by reference. This pleading sufficiently alleged that an agent or representative of the defendant King, committed a trespass at Loessin's business office in the county of suit.

It is undisputed that Thompson entered the premises of Loessin without permission of Loessin and removed certain items. The appellant contends that the plaintiff failed to prove that Thompson was an agent of King at the time of the trespass and that he was acting within the course and scope of his employment.

A contract between King and Smith Protective Services, Inc., is in evidence. It reflects that King contracted with Smith to conduct certain investigative services and agreed that the services would be performed by licensed investigators if required by law.

There was testimony that Mr. King told Mr. Meyers, who was acting for Smith Protective Services, Inc. that he desired an

investigation of tool thefts and sabotage at his John Deere Tractor Agency and certain other matters. In particular, he wanted to determine who was selling parts to a competitor "at a lowest cost than what was the normal rule within his area." Mr. Meyers testified that King explained to him what was required in order to satisfy the John Deere people that someone was infringing upon his region. Meyers stated that King told him that the only thing that would satisfy the John Deere people would be an invoice showing a 20% discount and that he wanted to secure one of those invoices. "He didn't particularly care how he went about getting it and said money was no object."

Mr. Meyers testified that while Mr. King did not specifically discuss a violation of the law in connection with the investigation, he did stipulate that he didn't particularly care how he went about getting the information he needed. Mr. Meyers hoped that his employees would not exceed the law because they had been warned not to, but he stated that he had given Mr. Jerry Dolly permission to discuss the matter with Mr. King. Mr. Meyers stated that he told Mr. King that if anything criminal came up he was going to have to bear the burden if he was going to coach the Smith investigators.

Mr. Thompson was a Smith employee before the contract with King was executed. Thompson took his instructions from Meyers. Mr. Thompson testified that he went with Jerry Dolly to see Delcer King and that Dolly did all the talking. He didn't hear Mr. King say anything about committing a burglary. Mr. Dolly gave him his instructions. Thompson admitted that he burglarized the Loessin Implement Company located in Weimar, Colorado County, Texas. He reported to Mr. Meyers after he "pulled the burglary". Meyers paid him for "conducting such burglary" with a Smith Protective Services, Inc. payroll check.

The corporation was employed to secure, among other things, an invoice. Thompson and Dolly were assigned to this case. They talked with Mr. King and there is testimony that he furnished them a broken part to take to Loessin's place of business for repair in order to give them an excuse for an entry.

There is nothing in the testimony of Mr. King which would support the conclusion that he had any right to control Smith as to the method or means by which the work contracted for was to be accomplished. There is no testimony that King in fact instructed either Meyers, Thompson, or Dolly concerning the methods to be used in conducting the investigations.

A crucial question for determination is whether Smith Protective Services, Inc. was an independent contractor or whether the corporation and its employees had the status of agents or employees of King. The written agreement merely provides that Smith Protective Services, Inc. will be compensated at the rate of $20 per hour plus expenses for its investigative services. It does not specify the services to be rendered.

Although there is no single rule that is absolute and definite, the outstanding and ultimately decisive consideration in determining the independence of the contract is the employers right to control the details of the work. The basic test of a contractor is that he render service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. Thus, if the employer is interested only in the results, and there is left to the party performing such services complete control of the details as to the method and manner of such performance, then the relationship of independent contractor exist. 30 Tex. Jur.2d Independent Contractors, Section 6, pp. 481 et seq.

An employer is not responsible for the acts or omissions of an independent contractor and his subcontractors or servants, committed in the prosecution of work that is not in itself unlawful or attended with danger to others. The doctrine of respondeat superior has no application. 30 Tex.Jur.2d, Independent Contractor, Section 17, pp. 300 301.

A person who contracts with another to perform a service unlawful in itself, even as an independent contractor, is responsible in damages for injury which might result from the performance of that service. *Taylor v. Dunn*, 80 Tex. 652, 16 S.W. 732 (1891); *Moore & Savage v. Kopplin*, 135 S.W. 1033 (Tex.Civ.App.1911, writ ref'd).

There is evidence which will support an implied fact finding of contemplated illegal activity on the part of Smith Protective Services, Inc. in conducting the investigation and of authorizing such activity if necessary to the successful completion of the investigation. This fact will be presumed found in support of the trial courts judgment. Under such circumstances the employer would not be insulated from liability by reason of the fact that the person perpetrating the offense might otherwise enjoy the status of an independent contractor.

Where an agents act is done within the scope of his authority, while acting in the furtherance of the principal's business, the principal is liable for his actions regardless of whether he had authority to do the particular act complained of, and regardless of whether he may have performed the act in the ordinary manner. *Magnolia Petroleum Co. v. Guffey*, 102 S.W.2d 408 (Tex. 1937).

A "trespass" within the meaning of Subdivision 9 of Article 1995, supra, includes injuries to property resulting from wrongful acts, either wilfully inflicted or the result of affirmative active negligence on the part of the wrongdoer, as distinguished from injuries that are the result of a mere omission of duty. *City of Mineral Wells v. McDonald*, 141 Tex. 113, 170 S.W.2d 466 (1943).

One who enters on land of another without having the consent of the owner commits a trespass on land. *Schronk v. Gilliam*, 380 S.W.2d 743 (Tex.Civ.App.— Waco 1964, no writ). A common law action of trespass is included within the meaning of the word "trespass" as used in Subdivision 9 of Article 1995, supra. *Hawkins v.*

*Schroeter*, 212 S.W.2d 843 (Tex.Civ.App.— San Antonio 1948, no writ).

To sustain venue under Subdivision 9, Article 1995, supra, the plaintiff must establish by a preponderance of the evidence (a) that a trespass has been committed; (b) that it was committed in the county of suit; and (c) that the defendant asserting his privilege committed the acts, or that they were committed by another under circumstances that make the defendant legally responsible. *Langford v. Craft*, 498 S.W.2d 42 (Tex.Civ.App.—Beaumont 1973, writ ref'd n. r. e.).

The venue facts required to be established in order to maintain venue under Subdivision 9, Article 1995, supra, have been established by a preponderance of the evidence.

Affirmed.