**Elmer T. GESSELL, Appellant,**

v.

**Mrs. Vina A. TRAWEEK, as next friend of Robert W. Traweek, a minor, Appellee.**

**No. 9003.**

Court of Appeals of Texas, Texarkana.

Jan. 5, 1982.

Rehearing Denied Feb. 2, 1982.

G. Luke Ashley, Thompson & Knight, Dallas, for appellant.

Samuel L. Boyd, McElroy & Boyd, Dallas, for appellee.

BLIEL, Justice.

Only Elmer Gessell appeals from the judgment entered, after a jury trial, against T. W. Larkin for $285,000.00 exemplary damages, and against Larkin and himself for $65,000.00 actual damages resulting from a shooting incident. The pivotal issue before us is whether there is legally sufficient evidence under any theory, to impose vicarious liability on Gessell for Larkin's tortious conduct. We conclude there is not. Therefore, we reverse and render judgment in favor of Gessell.

Vina Traweek filed suit on behalf of Robert Traweek, her minor son, for injuries resulting from the shooting incident that occurred on January 6, 1978, at 3840 Colgate, University Park, Dallas, Texas. Initially she sued only T. W. Larkin, who shot at the pickup truck in which the injured minor, his brother and two other boys were riding. Damages were sought on the basis of Larkin's negligence and gross negligence. Before trial she brought in as an additional defendant Elmer Gessell, Larkin's father-in-law. She asserted, under one or more theories, that Gessell was responsible for Larkin's acts.

Elmer Gessell purchased a house and lot at 3840 Colgate in University Park for his daughter Betsy. She lived in the house with her children before August, 1976. Gessell had no written agreement with his daughter concerning the lease or occupancy of the premises. She paid no fixed sum of money as rent nor did she regularly pay for the use of the property.

In August, 1976, Betsy married T. W. Larkin, who moved into the house. Gessell made no agreement with Larkin concerning the occupancy of the premises, the amount of rent to be paid, or Larkin's responsibility with regard to care of the property and its protection. These matters were never discussed. When the Larkins paid rent, they paid $300.00 per month. Gessell assumed responsibility for most of the expenses incurred in connection with the home.

On January 6, 1978, between 9:00 P.M. and 9:30 P.M. Betsy Larkin heard a rattling or tapping at the front door. She alerted her husband, asking that he investigate. He took a shotgun from the closet, loaded it and went outside with the gun and a flash-

light. He then saw no one at first but went around to the side of the house. He saw two people running down the alley behind the house. Larkin turned around and told his wife, who was waiting at the door, to call the police. He went around to the side of the house and when he passed a big bush, heard what he thought were gunshots. About that time the pickup truck, with the lights turned off, speedily backed out the alley. Larkin had to get out of the way quickly, thinking that the pickup truck was going to run him over. He shined the flashlight at the pickup, and fired his shotgun at what he thought was the rear taillight of the pickup, intending to mark it for identification purposes. Larkin stated that he initially went outside to investigate because he wanted to protect his wife.

One pellet from the shotgun blast lodged above Bobby Traweek's eye. The pickup sped away and the boys went to a friend's house where an ambulance was summoned to take Bobby to Presbyterian Hospital. He was treated and released two days later. Dr. James Bentley, an ophthalmologist, treated him five times. Bobby Traweek, who was thirteen at the time of the incident, saw a psychiatrist three times over a two year period.

In the final pleadings, recovery was sought against Gessell on the grounds that Larkin was his agent, acting within the scope of their implied agreement, and that he was guilty of negligently entrusting care of his house to Larkin. The jury found that there was an implied agreement between Gessell and Larkin for care and protection of the property but did not find that Larkin's conduct during the occurrence was within the scope of the agreement. It also failed to find that: Gessell possessed power to direct Larkin with regard to the care and protection of the property; Gessell was negligent; or Gessell ratified the conduct of Larkin after the occurrence. The jury did find that the protection of Gessell's property was a task attendant with dangers to others. Appellees seek to uphold the judgment on the basis of this finding, coupled with the legal relationship between Gessell and Larkin. We now look to the legal relationships which might give rise to liability under the evidence and jury findings.

## EMPLOYER–INDEPENDENT CONTRACTOR

■ The Traweeks' primary argument to support the judgment against Gessell is that he was an employer of Larkin, an independent contractor and, because the protection of the property was found to be a task attendant with dangers to others, responsibility attaches. *King v. Loessin*, 572 S.W.2d 87 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ), is urged as authority for holding Gessell liable. It is a venue case which cites *Taylor v. Dunn*, 80 Tex. 652, 16 S.W. 732 (1891), for the proposition that a person who contracts with another to perform a service unlawful in itself, even as an independent contractor, is responsible for injury which might result from the performance of that service. There is no evidence in the case before us that Gessell contracted with Larkin for the performance of an unlawful act.

■ The Traweeks also seek to support the judgment on the basis that the work to be performed was inherently dangerous. One who contracts for work to be done by an independent contractor is not liable for the latter's negligence except where the work is inherently dangerous however skillfully done. Inherently dangerous work is that which will probably result in injury to a third person or the public. Recovery is not allowed for an act purely collateral to the work when the act arises entirely from the wrongful conduct of the independent contractor. *Goolsby v. Kenney*, 545 S.W.2d 591 (Tex.Civ.App.—Tyler 1976, writ ref'd n. r. e.). An employer is liable for injury to third persons resulting directly from the inherently dangerous work which might reasonably have been in the parties' contemplation; no recovery is allowed for injury resulting entirely from an independent contractor's wrongful act purely collateral to the work. *Loyd v. Herrington*, 143 Tex. 135, 182 S.W.2d 1003 (1944).

Determining whether the work of Larkin in caring for and protecting the property is inherently dangerous is a key to resolving this issue. The Restatement (Second) of Torts §§ 416 and 427 (1965), define inherently dangerous. Section 416 provides:

"One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise."

Section 427, closely related to Section 416, states in a different form the same general rule, that the employer remains liable for injuries resulting from dangers which he should contemplate at the time he enters into the contract.[1] Here the jury failed to find Gessell negligent in any manner and failed to find that Larkin's conduct was within the ambit of the implied agreement. Sections 416 and 427 of the Restatement apply only where the harm results from the negligence of the contractor in failing to take precautions against the dangers involved in the work itself, which the employer should contemplate at the time of contract. These sections have no application where the negligence of the contractor creates a new risk not inherent in the work itself. The Restatement (Second) of the Torts § 426 covers collateral negligence of a contractor. Under that Section Larkin's negligence would be considered collateral and not inherent in the work itself. Although the evidence is legally insufficient to establish that Larkin was an independent contractor employed by Gessell, even if he were, Gessell would not be liable because the work Larkin was to perform was not inherently dangerous. *Gaspard v. Cox*, 583 S.W.2d 877 (Tex.Civ.App.—El Paso 1979, writ ref'd n. r. e.). Furthermore, the evidence is legally insufficient to support the jury's finding that the protection of the property was a task attendant with danger to others.

## PRINCIPAL–AGENT

■ If the relationship of Gessell and Larkin is one of principal and agent, it has to be based upon the implied agreement. Acts done in excess of the agent's authority do not bind the principal. *McAlpin v. Cassidy*, 17 Tex. 449 (1856); *Webb v. Webb*, 602 S.W.2d 127 (Tex.Civ.App.—Austin 1980, no writ); *Geders v. Aircraft Engine and Accessory Co., Inc.*, 599 S.W.2d 646 (Tex.Civ. App.—Dallas 1980, no writ).

■ We have already noted that the jury failed to find that Gessell possessed the power to direct Larkin in regard to the work. The jury also found that his conduct was outside the scope of the implied agreement and it failed to find that Gessell ratified Larkin's conduct. Gessell's liability based upon a principal-agent relationship is not supportable under the jury findings or under the evidence.

## EMPLOYER–EMPLOYEE

■ To constitute the relationship of master and servant, or employer and employee, for the purpose of fixing liability on the employer for the acts of the employee, the person sought to be charged must have the power and duty to control the alleged employee while in his employment, not only as to what shall be done, but also as to how it shall be done. *Continental Insurance Co. v. Clark*, 450 S.W.2d 684 (Tex.Civ.App.— Tyler 1970, writ ref'd n. r. e.); *Clark v. Texaco*, 382 S.W.2d 953 (Tex.Civ.App.—Dallas 1964, writ ref'd n. r. e.); *W. D. Haden Co. v. Ryman*, 362 S.W.2d 133 (Tex.Civ.App. —Houston 1962, writ ref'd). The jury's

1. Restatement (Second) of Torts § 427 provides:

"One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger."

failure to find that Gessell possessed the power to direct Larkin eliminates this theory of liability of Gessell for Larkin's conduct.

## LANDLORD–TENANT

The evidence does not establish a landlord-tenant relationship in the normal sense. Even if such relationship existed, Gessell would only expect Larkin to do things normally required by a landlord, such as keeping the property in good repair, paying rent and other similar acts. Protection of a landlord's property by use of a shotgun is not a normal requirement. In any instance, the facts do not show that Larkin's use of the shotgun was to protect the property or was in furtherance of any of Gessell's interests. On the contrary, the evidence shows that Larkin's motive was to protect his wife.

## CONCLUSION

We conclude that under the findings of the jury and facts of record the evidence is legally insufficient to support the judgment of liability of Elmer Gessell resulting from any legal relationship which he had with T. W. Larkin. Therefore, the judgment, to the extent it awards the appellees $65,000 actual damages from the Appellant Gessell, is reversed because there is no evidence to support it. Even if the record could be construed as having some evidentiary support we would find it insufficient to uphold the judgment against Gessell.

We reverse the judgment rendered against Elmer Gessell and render judgment that the appellees recover nothing from him.