Joe B. KING and Wife, Mildred
Deborah King, Appellants,

v.

ASSOCIATES COMMERCIAL
CORPORATION, Appellee.

No. 9543.

Court of Appeals of Texas,
Texarkana.

Nov. 17, 1987.

Rehearing Denied Jan. 6, 1988.

Lauren L. Parish, Parish & Parish Law Offices, Gilmer, for appellants.

Michael L. Dunn, Smead, Anderson, Wilcox & Dunn, Longview, for appellee.

PER CURIAM.

Joe King and his wife appeal the judgment of the trial court in a suit concerning the repossession of a truck. Associates Commercial Corporation, appellee, brings a cross-appeal. Because there is no evidence to support Associates' liability, we reverse the judgment of the trial court.

On July 3, 1982, the Kings purchased a 1982 Freightliner truck from Brodnax Truck and Trailer Company in Tyler. They made a down payment of $22,000.00; the remainder of the sale price was financed through a security agreement with Brodnax. The security agreement contained an assignment of Brodnax's rights, title and interest to Associates Commercial Corporation. The first payment was due August 3, 1982. The Kings made only one payment, which they made on September 4, 1982.

Beginning on August 10, 1982, Associates, or others acting for them, made numerous attempts by telephone to contact the Kings concerning payments past due on the truck. In the latter part of October 1982, the Kings received a visit from Charles Beasley, district manager for Associates. Joe King testified that he told Beasley that he had a job for the truck and did not want to relinquish the truck; he wanted to work and pay for it. Beasley testified that King told him that he was out of work and had no money and that he would burn the truck before giving it back to Associates.

In November a man who identified himself as Tommy Ponder telephoned Joe King, offering him a job in San Antonio. Ponder told King that he would arrange for him to stay at a motel in San Antonio. The telephone number given by Ponder was the same as the office telephone number of Mando Romano. Bexar Recovery Bureau, the repossession agency hired by Associates to repossess the truck from the Kings, consisted of Romano and one other person.

The Kings drove the truck to San Antonio, arriving on November 22, 1982. They went to the previously designated Motel 6, where a room had been prepaid for them. Later that evening, a man came to their room, saying that they had forgotten their television key, although the Kings already had their key. He told King to park the truck in front of the motel. King refused to do so.

Deborah King woke up the next morning about five, looked out the window, and noticed that the truck was gone. She immediately woke her husband and told him. They then noticed that the door to their motel room, which opened in, had been tied to the outside railing with a rope. Joe King tried to force the door open so that he could cut the rope with his pocketknife. His wife was terrified, thinking the people who had done it might still be outside. After a short time, Joe King opened the door enough to cut the rope.

The Kings went to the motel office to tell the manager. When the manager told them that he knew nothing about it, Joe King reported the incident to the police.

The Kings originally sued Associates, Bexar Recovery Bureau and Tommy Ponder. Motel 6 and Mando Romano were later added as defendants. The jury found in effect that the repossession had been induced by fraud on the part of Bexar. The jury also found that Bexar had wrongfully repossessed the truck, that Bexar was an agent of Associates, that Associates had acted with gross negligence in hiring Bexar, and that the Kings' failure to return the truck to Associates when requested to do so was contributory negligence which caused twenty percent of the Kings' damages. In addition, the jury found that Motel 6 had provided a reasonably safe place for the Kings to stay. The jury then found that Joe King should receive $10,000.00 for past physical pain and mental anguish and $60,000.00 for lost earnings, and that Deborah King should receive $5,000.00 for past physical pain and mental anguish and $1,000.00 for medical expenses. The jury assessed $110,000.00 in punitive damages against Bexar and $150,000.00 against Associates.

In its judgment, the trial court disregarded the finding of gross negligence on the part of Associates because there was no evidence to support that finding. Therefore, it also disregarded the finding of punitive damages against Associates. The court entered judgment for the Kings in the amount of the actual damages found by the jury reduced by twenty percent. It also awarded the Kings the punitive damages assessed against Bexar.

The Kings raise points of error alleging that the trial court erred: (1) in disregarding the jury's finding that Associates was grossly negligent in hiring Bexar to repossess the truck from the Kings, and consequently, in refusing to award the exemplary damages found by the jury against Associates; (2) in failing to find Associates jointly and severally liable for the exemplary damages awarded against Bexar; and (3) in rendering judgment based on the jury's finding of the Kings' contributory negligence because there was no evidence or insufficient evidence to support that finding and because contributory negligence is not a defense to the Kings' cause of action. Due to the nature of the cross-points of error raised by Associates and our disposition of certain of those cross-points, we do not reach the points of error brought by the Kings.

Associates raises numerous cross-points of error. It groups these cross-points into three main areas: the employment relationship between Associates and Bexar, the jury's findings that the repossession of the truck from the Kings was wrongful, and damages.

Associates argues that the trial court erred in overruling its motion to disregard the jury's answer to Special Issue No. 11 because the evidence established that Bexar was an independent contractor as a matter of law. Special Issue No. 11 inquired:

> On the occasion in question was Bexar Recovery Bureau acting as an agent or employee of Associates Commercial Corporation, or were they acting as an independent contractor?
>
> "Agent or Employee" means a person in the service of another with an understanding, express or implied, that such other person has the right to direct the details of the work and not merely the result to be accomplished.
>
> "Independent Contractor" means a person who, in the pursuit of an independent business, undertakes to do specific work for another person, using his own means and methods without submitting himself to the control of such other person with respect to the details of the work, and who represents the will of such other person only as to the result of his work and not as to the means by which it is accomplished.
>
> If you find from a preponderance of the evidence that they was [sic] acting as an "agent or employee" you will answer "agent or employee"; otherwise, you will answer "independent contractor".

The jury found that Bexar was an agent of Associates.

In reviewing a no evidence point, we consider only the evidence tending to support the finding, viewing it in the light most favorable to the finding, giving effect to all reasonable inferences therefrom, and disregarding all contrary or conflicting evidence. *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400 (Tex.1981). An insufficient evidence point requires us to consider and weigh all of the evidence. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

■ An independent contractor is one who renders service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. *King v. Loessin,* 572 S.W.2d 87, 89 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ).

■ Associates presented testimony from several of its employees regarding whether it exercised control over Romano. The repossession of the truck from the Kings was handled by Associates' Houston office, because Upshur County was included in the territory assigned to that office. Mark Garey, branch manager for Associates' Houston office, testified that Associates had no control over who Romano employed, or what hours he worked and that Associates gave Romano no instructions as to how or where he reported for work, or over any details of how he did his job. He met with Romano in May of 1982, the first time Romano had been used by the Houston office after Garey began work there. He told Romano how Associates expected him to perform his job in a general sense; for example, not to break the law.

David Satterfield, collection manager for Associates' Houston branch, was present at the meeting between Garey and Romano, although he did not remember whether or not Romano signed any agreements with Associates. It was Associates' policy to have agreements with repossessors. Satterfield said that Romano worked on a contingency basis only, explaining, "[w]e would show him the circumstances, the file,

what had transpired with our communication with the customer, and he would say, 'Okay, I'll do it for a set "price." ' And we paid him nothing unless the contract was done." Romano was given no specific instructions as to how to do this particular job, but was merely told to locate and repossess the truck.

Although Satterfield stated that the Associates' San Antonio office was not involved in the repossession of the Kings' truck, Rubin Espinoza, collection manager for that office, testified. Espinoza said that he had used Romano's services on prior occasions with satisfactory results. Espinoza used the term "co-operator" to refer to Romano and defined a co-operator as "an independent who's going out to pick up the unit for you." Espinoza also said that when Romano went out to repossess a vehicle he went to do this according to the instructions given by Associates for Associates' benefit. When he was asked, "So you have to clothe him with some kind of authority to operate and function as your agent out there, don't you?", Espinoza answered "Yes."

Considering only the evidence tending to support the jury's finding, there is no evidence to support the finding that Bexar was acting as an agent of Associates. However, assuming Espinoza's statement concerning Romano's authority when he was employed by Associates' San Antonio office is some evidence of agency, we hold that it is insufficient to support the jury's finding of agency. The evidence establishes as a matter of law that Bexar was acting as an independent contractor.

■ One who contracts for work to be done by an independent contractor is not liable for that contractor's negligence except when the work is inherently dangerous, however skillfully done. *Gessell v. Traweek,* 628 S.W.2d 479, 481 (Tex.App.—Texarkana 1982, writ ref'd n.r.e.). Inherently dangerous work is work which will probably result in injury to a third person or the public. *Gessell v. Traweek,* 628 S.W.2d at 481.

█ Texas recognizes a cause of action for the negligent hiring of an independent contractor. *See Jones v. Southwestern Newspapers Corp.*, 694 S.W.2d 455 (Tex.App.—Amarillo 1985, no writ); *Texas American Bank v. Boggess*, 673 S.W.2d 398 (Tex.App.—Fort Worth 1984, writ dism'd by agr.); *Moore v. Roberts*, 93 S.W. 2d 236 (Tex.Civ.App.—Texarkana 1936, writ ref'd); *Simonton v. Perry*, 62 S.W. 1090 (Tex.Civ.App.1901, no writ). An employer has a duty to use ordinary care in employing an independent contractor. *Jones v. Southwestern Newspapers Corp.*, 694 S.W.2d at 458. One hiring an independent contractor may be held responsible for the contractor's negligent acts if the employer knew or should have known that the contractor was incompetent and a third person was injured because of the contractor's incompetency. *Texas American Bank v. Boggess*, 673 S.W.2d at 400.

One factor courts have looked to in determining whether an employer was negligent in hiring an independent contractor is whether the employer conducted an inquiry into the contractor's qualifications before hiring the contractor. Annot., 78 A.L.R.3d 910 § 2[a] (1977). Some courts have refused to hold an employer responsible for the negligence of an independent contractor when the employer had conducted an inquiry into the contractor's competency prior to hiring the contractor. Annot., 78 A.L.R.3d 910 § 5[a] (1977); *see Moore v. Roberts*, 93 S.W.2d 236. Also, courts have held that the failure of an employer to investigate the qualifications of an independent contractor indicates that the employer was negligent in hiring the contractor. Annot., 78 A.L.R.3d 910 §§ 2[a], 6 (1977). If an inquiry was made by the employer, the question then becomes whether the inquiry made was sufficient to constitute the exercise of due care.

Associates complains that the trial court erred in overruling its motion to disregard the jury's answer to Special Issue No. 13 because there is no evidence, or in the alternative, insufficient evidence that Associates was negligent in contracting with Bexar to repossess the truck from the Kings. Special Issue No. 13 asked:

Was Associates Commercial Corporation negligent in hiring Bexar Recovery Bureau to repossess the Kings' vehicle?

An employer of an independent contractor has the duty to use reasonable care to determine that the contractor is generally competent to perform the work to be performed.

Answer "Yes" or "No".

The jury answered yes. We have already set out the standards for reviewing the sufficiency of the evidence to support the jury's finding in the face of both no evidence and insufficient evidence complaints.

As mentioned earlier, it was Associates' Houston branch that dealt with the repossession of the truck from the Kings. Mark Garey was branch manager of the Houston office when the truck was repossessed and David Satterfield was collection manager of that office. Garey testified that when Romano was used for the first time after Garey became branch manager, he had Satterfield investigate Romano, although it was his understanding that the Houston office had used Romano's services before. Garey said that he had directed that Romano be investigated to make sure that he was all right. He said that they had gotten good references from everyone they had called. After Garey had Romano investigated, Associates used Romano's services five or six times before he repossessed the truck from the Kings. Garey said that there were no reports of problems concerning Romano.

Satterfield also testified concerning his initial check on Romano. He called several heads of collection departments who were also in the heavy duty truck financing business, such as GMAC in Houston and Paccar Financial in Dallas. Romano had worked for these people, who spoke highly of him. Satterfield stated that he had also spoken with a loan officer at Frost National Bank in San Antonio, as well as to others whom he could not remember. He said that he asked the people he talked with how many times they had used Romano's services, what the results were, and if they had encountered any problems with Roma-

no's work, including character or legal problems. Satterfield did not check to see if Romano had a criminal record or check his driving record.

The Kings reply that because Associates did not check Romano's driving record or his criminal record, the inquiry by Associates was not sufficient to constitute the exercise of due care. Nothing was introduced into evidence concerning Romano's driving record or his criminal record, if he did indeed have a criminal record. There is nothing to indicate that Associates would have discovered anything which would have shown that Romano was incompetent to perform the services required of him by Associates if Associates had checked these records.

Negligence is not to be presumed—the mere fact that an independent contractor negligently caused an injury to another affords no presumption that the employer was negligent in his selection of the contractor. *Moore v. Roberts*, 93 S.W. 2d at 239. The evidence establishes that Associates did conduct a sufficient inquiry into Bexar's qualifications before it hired the contractor to repossess the truck from the Kings. There is no evidence that Associates was negligent in hiring Bexar.

Therefore, we reverse the judgment of the trial court insofar as it awards recovery against Associates and render judgment that the Kings take nothing from Associates in this suit.

### ON MOTION FOR REHEARING

The Kings, through a point in their motion for rehearing, maintain that this Court erred in rendering judgment in favor of cross-appellant Associates because we do not have jurisdiction over Associates' cross-appeal. They argue that because Associates did not file a cost bond, its cross-points of error are not properly before us. The record contains no notice of limitation of appeal. No attempt to limit the scope of an appeal is effective as to a party adverse to the appellant unless the severable portion of the judgment from which the appeal is taken is designated in a notice served on the adverse party within fifteen days after judgment is signed, or if a motion for new trial is filed by any party, within seventy-five days after the judgment is signed. Tex.R.App.P. 40(a)(4).

Therefore, we overruled this point and the other points in the motion for rehearing.