TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00850-CV






Darrell Jackson and Rondal Daniels, Appellants



v.



CT Corporation Systems d/b/a Albertson's, Inc. and Security Officer X, a/k/a


Mack McBride, Individually and Employee of Albertson's, Appellees





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 98-12172, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING 







 Appellants Darrell Jackson and Rondal Daniels appeal the district court's order
granting summary judgment in favor of appellees CT Corporation Systems d/b/a Albertson's, Inc.
("Albertson's") and Security Officer X, a/k/a Mack McBride. (1) We will affirm in part and reverse
and remand in part.

 On November 7, 1996, Jackson and Daniels went to an Albertson's grocery store. 
They were approached by a man they later learned was Mack McBride, an off-duty Department
of Public Safety ("DPS") trooper acting as a security guard for Albertson's. Although the facts
leading up to the confrontation are disputed, all parties agree that McBride sprayed pepper spray
at appellants. Appellants sued Albertson's and McBride (naming McBride as Security Officer X
in their pleadings), claiming Albertson's negligently employed McBride and was liable for his
actions. Albertson's filed a general denial and a motion for summary judgment. The district
court granted the motion for summary judgment and dismissed appellants' claims.


Judgment for McBride

 At the time they filed suit, appellants did not know the name of the security officer
with whom they had their confrontation. Therefore, they named him in their pleadings as
"Security Officer X." Appellants' causes of action--respondeat superior and negligent hiring and
supervision--sought damages only from Albertson's, not from Security Officer X. Although
Security Officer X was later identified as Mack McBride, appellants never amended their
pleadings to name him individually, nor did they request that he be served with citation. 
Albertson's moved for summary judgment for McBride on the grounds that he was never served
with process and therefore the statute of limitations had run on any claims against him. The
district court granted summary judgment for Albertson's and McBride, still named in court filings
as Security Officer X, without specifying the grounds on which its judgment was based. 

 Even assuming McBride was actually named as a defendant or that allegations were
made that could have subjected him to individual liability, appellants do not attack the summary
judgment in McBride's favor. We will not reverse a trial court's judgment in the absence of
properly assigned error. See San Jacinto River Auth. v. Duke, 783 S.W.2d 209, 210 (Tex. 1990);
Orchid Software, Inc. v. Prentice-Hall, Inc., 804 S.W.2d 208, 211 (Tex. App.--Austin 1991, writ
denied); Larrumbide v. Doctors Health Facilities, 734 S.W.2d 685, 687 (Tex. App.--Dallas 1987, 
writ denied). When a summary judgment rests on more than one ground and the aggrieved party
does not assign error as to each of the grounds, we will affirm the portion of the judgment not
attacked. See Texas Dep't of Human Resources v. Orr, 730 S.W.2d 435, 436 (Tex. App.--Austin
1987, no writ). We affirm the portion of the district court's order that grants summary judgment
for McBride.


Summary Judgment for Albertson's

 Albertson's moved for summary judgment arguing that at the time of the incident,
McBride was no longer acting as an employee of Albertson's because he believed he had
witnessed a crime and thus "reverted to his public role as a law enforcement officer." Albertson's
argued appellants could not produce any evidence that McBride was an employee when he sprayed
them with pepper spray, thus their respondeat superior claims must fail. See Tex. R. Civ. P.
166a(i). Albertson's further argued that it was not liable for negligent hiring or supervision
because it had confirmed McBride's continued employment as a DPS trooper in good standing.


Standard of Review

 A traditional motion for summary judgment is properly granted only when the
movant establishes that there are no genuine issues of material fact to be decided and that it is
entitled to judgment as a matter of law. See Tex. R. Civ. P. 166a(c); Lear Siegler, Inc. v. Perez,
819 S.W.2d 470, 471 (Tex. 1991); Memorial Med. Ctr. v. Howard, 975 S.W.2d 691, 692 (Tex.
App.--Austin 1998, pet. denied). If the defendant establishes its right to summary judgment, the
burden shifts to the plaintiff to raise a fact issue. See Centeq Realty, Inc. v. Siegler, 899 S.W.2d
195, 197 (Tex. 1995).

 A party may also move for a "no-evidence" summary judgment. See Tex. R. Civ.
P. 166a(i). Such a motion asserts there is no evidence of one or more essential elements of claims
upon which the opposing party would have the burden of proof at trial. See id.; McCombs v.
Children's Med. Ctr., 1 S.W.3d 256, 258 (Tex. App.--Texarkana 1999, no pet.). The moving
party does not bear the burden of establishing each element of its claim or defense as it does when
moving for a traditional summary judgment. See McCombs, 1 S.W.3d at 258. A no-evidence
summary judgment is essentially a pretrial directed verdict, to which we apply the same legal
sufficiency standard of review. See Jackson v. Fiesta Mart, Inc., 979 S.W.2d 68, 70 (Tex.
App.--Austin 1998, no pet.). A no-evidence summary judgment is properly granted if the non-movant does not produce more than a scintilla of probative evidence to raise a genuine issue of
fact as to an essential element of its claim on which it would have the burden of proof at trial. 
See Tex. R. Civ. P. 166a(i); Jackson, 979 S.W.2d at 70-71. 

 In reviewing the grant of summary judgment, we view the evidence in the light
most favorable to the non-movant and make every reasonable inference and resolve all doubts in
favor of the non-movant. See Siegler, 899 S.W.2d at 197; Howard, 975 S.W.2d at 693. When
the trial court's order granting summary judgment does not specify the grounds relied upon, we
will affirm the judgment if it is supported by any of the grounds put forth by the movant. See
Bradley v. State ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999); Howard, 975 S.W.2d at 693. 


Respondeat Superior

 Albertson's argued it was not liable under the doctrine of respondeat superior
because appellants had not produced evidence that McBride was acting as an Albertson's employee
during the confrontation with appellants. Albertson's contended that McBride believed appellants
were attempting to steal merchandise and therefore intervened as a police officer. As evidence,
Albertson's attached appellants' original petition, Jackson's answers to interrogatories, and
McBride's affidavit.

 McBride's affidavit stated that he had been a DPS trooper for over seventeen years,
was a trooper at the time of the incident, and was still employed as a trooper at the time he
prepared his affidavit. He stated he underwent background checks, a criminal history check, and
interviews, and passed all required tests and DPS training programs before becoming a trooper. 
McBride's training involved the study of criminal statutes, including those related to property
theft, and criminal procedure, including the requirement that as a trooper he is to intervene if he
observes or learns of a crime. McBride stated he was retained by Albertson's as "an undercover
police officer to help prevent shoplifting." Before being hired, he passed a drug test and
interviewed with the store's director, who confirmed his employment with DPS. McBride
described the incident as follows:


I was told by another undercover police officer, Mr. Peter Mendoza, that he had
observed two suspicious customers. Mr. Mendoza pointed out these gentlemen
from the upstairs catwalk. I saw these men putting merchandise into their pockets. 
Based on my observations, I believe the two gentlemen, who are appellants in this
lawsuit, were involved in a theft of property. . . . I went to these two men,
identified myself and showed them my badge. I told them I believed they had
merchandise in their pockets. Both of these men threatened me and one of them
pushed me. I felt threatened and I grabbed my pepper spray. In self-defense I
sprayed the men with the spray.

 In response, appellants argued McBride could not have believed they were stealing
any items because they did nothing to cause suspicion. They denied threatening or shoving
McBride before he sprayed them with pepper spray. Appellants contended that McBride did not
approach them with any intention to arrest them. (2) To show McBride did not act as a police officer
during the confrontation, they pointed to McBride's failure to search them for stolen merchandise,
or to arrest, charge, or prosecute them for theft or any other offense. See Duran v. Furr's
Supermarkets, Inc., 921 S.W.2d 778, 785 (Tex. App.--El Paso 1996, writ denied). As evidence,
appellants attached their original petition, McBride's affidavit, and Jackson's affidavit. 

 In his affidavit, Jackson stated that McBride, wearing jeans and a wind breaker,
approached him and Daniels as they were shopping. Believing McBride was a customer, Jackson
asked him where deodorant products were located and followed him, assuming he was showing
them where to go. When Jackson reached for an item, McBride "immediately took a can of
mace" and sprayed it in appellants' faces. Jackson stated that before spraying them, McBride had
not identified himself as an officer or shown a badge. After spraying them, McBride asked if
appellants had taken anything, and appellants replied that they had not. Appellants filed a
complaint with the store manager. Before filling out the complaint form, Jackson was never told
that McBride was a store employee. Jackson said he was never told that McBride was a DPS
trooper. Jackson denied that either he or Daniels had touched any items other than a bottle of
antacids that Daniels intended to buy; he further denied that they intended to steal anything, that
they had acted suspiciously, or that they threatened, pushed, struck, shoved, or made contact with
McBride before being sprayed with pepper spray. 

 Under the doctrine of respondeat superior, an employer may be held liable for
injuries proximately caused by the negligent actions of its employee taken within the scope of his
employment. See Baptist Mem'l Hosp. Sys. v. Sampson, 969 S.W.2d 945, 947 (Tex. 1998). 
Liability is imposed because the employer has the right to control the means and methods of the
employee's work. See id. 

 Albertson's admits that it employed McBride, and McBride states that he was
retained by Albertson's to work as an undercover police officer to help prevent shoplifting. 
Albertson's contends, however, that as a matter of law it cannot be liable for McBride's actions
in the event, while carrying out his employment duties, he observes someone shoplifting and takes
steps to investigate. 

 Appellees direct us to authority that holds that an off-duty police officer who has
probable cause to believe that a crime is being committed is under a duty to investigate. See Tex.
Code Crim Proc. Ann. art. 2.13 (West Supp. 2000) (amended without substantive change by Act
of Sept. 1, 1999, 76th Leg., R.S., ch. 685, § 1, 1999 Tex. Gen. Laws 3256); Moore v. State, 999
S.W.2d 385, 404 (Tex. Crim. App. 1999); Blackwell v. Harris County, 909 S.W.2d 135, 139
(Tex. App.--Houston [14th Dist.] 1995, writ denied). The officer is also under a duty to prevent
crime and arrest offenders. See Tex. Code Crim. Proc. Ann. art. 2.13. An officer who observes
a person about to commit an offense against the property of another must intervene to prevent the
offense. See id. art. 6.06 (West Supp. 2000). The Court of Criminal Appeals has held that an
off-duty police officer who observes a crime becomes an on-duty police officer as a matter of law. 
See Hafdahl v. State, 805 S.W.2d 396, 401 (Tex. Crim. App. 1990); see also City of Dallas v.
Half Price Books, Records, Magazines, Inc., 883 S.W.2d 374, 377 (Tex. App.--Dallas 1994, no
writ) (Half Price I). Once the officer begins to investigate, he acts in his capacity as an on-duty
police officer, not as a private citizen. See Moore, 999 S.W.2d at 404; Blackwell, 909 S.W.2d
at 140; Half Price Books I, 883 S.W.2d at 377. 

 Relying on these authorities, Albertson's argues that at the moment an off-duty
undercover officer in its employ--hired for the purpose of deterring shoplifting--observes a customer
shoplifting, he immediately becomes a public law enforcement official regardless of his intent, and
that Albertson's can have no liability for his conduct thereafter in carrying out the very duties for
which he was hired. We seriously question the logic of this position. But, even assuming that
the law could lead to this result, we do not believe that on this record the case is proper for
summary judgment. 

 McBride stated in his affidavit that he had witnessed appellants commit what he
believed to be the offense of theft. Under Albertson's theory, his statement forecloses any further
inquiry; thereafter, McBride was no longer in its employ. (3) McBride also stated that he confronted
appellants and identified himself as an officer, that they threatened him in the course of his
investigation, and that he reacted in self defense. Jackson's affidavit disputed this version of
events entirely. He denied that appellants did anything to raise suspicion, denied that either of
them had taken or concealed anything, and denied that McBride ever identified himself as an
officer. We believe that on this record at the very least there is a disputed fact as to what
McBride actually observed and whether a violation of law occurred. (4) This issue is especially
important in light of the fact that the record does not prove that McBride handled the confrontation
as a law enforcement officer investigating a crime. The parties dispute whether he identified
himself as an officer; the record does not show that he searched appellants, detained them,
charged them, or took any punitive or legal measures due to their threats as he carried out law
enforcement duties. The record does not clearly demonstrate McBride acted in his public role and
contains some evidence that he was merely carrying out his employment duties. We sustain issue
number one. 

Negligent Hiring and Supervision

 Albertson's contended it was not liable for negligent hiring or supervision because
McBride was a DPS trooper and therefore had undergone background checks and interviews. 
Albertson's argued it met any duty it might have had by verifying his continued employment in
good standing with DPS. Further, Albertson's asserted that the incident could have occurred even
if Albertson's had not hired McBride because he was under an obligation to stop crime whether
he was acting as a security guard or simply shopping in the store. As evidence, Albertson's
attached the affidavit of Greg White, the store director, which stated:


When I hired [McBride] I knew that he was a law enforcement officer and had
been a military policeman. When hired, Mr. McBride was a [DPS] trooper and
had been for several years. I knew this from interviewing them. Because of his
law enforcement background, I believed that he was responsible and
knowledgeable of the laws of Texas as they regarded theft and did not believe that
he needed to undertake any further training. Before I hired Mr. McBride, I
interviewed him and he told me that he was a law enforcement officer. I called his
employer to confirm that he was in fact a [sic] officer in good standing. I was told
he was an active trooper. Because of this training as a member of the DPS, I hired
him. Before he was hired, he did have to undergo a drug screen which he passed. 


 In response, appellants asserted that White's affidavit showed Albertson's did not
provide any training to McBride. They further asserted Albertson's made "no inquiries as to
whether there were any grievances, reprimands, whether [McBride] had been demoted, whether
he had committed assault on other individuals or whether he had investigations of any kind
pending." Appellants argued Albertson's was negligent in relying on "training from any other
job which may or may not be relevant to" McBride's duties at Albertson's and in deciding
McBride's employment by DPS was sufficient to qualify him to provide store security.

 An employer has a duty to adequately hire, train, and supervise employees. See
Castillo v. Gared, Inc., 1 S.W.3d 781, 786 (Tex. App.--Houston [1st Dist.] 1999, pet. denied). 
An employer may be held directly liable for hiring or retaining an incompetent employee,
especially where the employee's competence and job duties could endanger others. See Guidry
v. National Freight, Inc., 944 S.W.2d 807, 810 (Tex. App.--Austin 1997, no writ). Liability may
be imposed if the employer brings into contact with another person an employee known to the
employer to be "particularly likely to commit intentional misconduct, under circumstances which
afford a peculiar opportunity or temptation for such misconduct." Id. One factor to be examined
in determining whether the employer was negligent is whether the employer inquired into the
employee's background before hiring him. See King v. Associates Commercial Corp., 744
S.W.2d 209, 213 (Tex. App.--Texarkana 1987, writ denied). If the employer made an inquiry,
the question is then whether the inquiry was sufficient to constitute due care. See id.

 White averred that he inquired into McBride's employment with DPS and
confirmed that he was an active trooper in good standing. There is no evidence that with further
inquiry White would have discovered information that might have shown McBride to be
incompetent, dangerous, or otherwise unfit to provide store security. See id. at 214. Appellants
produced no evidence showing McBride had been disciplined, demoted, suspended, or questioned
in any way as to his job performance. Appellants did not rebut the evidence produced by
Albertson's that it used due care in investigating McBride's qualifications. We overrule issue
number two.


Denial of Motion for New Trial

 In their third issue on appeal, appellants contend the trial court erred in denying
their motion for a new trial. We will not reverse the trial court's decision absent a showing of
a manifest abuse of discretion. See Poth v. Small, Craig & Werkenthin, L.L.P., 967 S.W.2d 511,
514 (Tex. App.--Austin 1998, pet. denied). Appellants have not carried their burden of showing
the district court abused its discretion in denying their motion. We overrule issue number three. 


Conclusion Having sustained appellants' first issue on appeal, we reverse the portion of the
district court's order granting summary judgment on appellants' respondeat superior claims, and
we remand the cause for further proceedings on those claims. We affirm the district court's order
granting summary judgment on appellants' claims against McBride and against Albertson's for
negligent hiring and supervision.



 


 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed in Part; Reversed and Remanded in Part

Filed: July 27, 2000

Do Not Publish
1. We note that CT Corporation Systems (CT Corporation) is an agent for Albertson's; it does
not do business as Albertson's. In their original petition, appellants styled as a defendant "CT
Corporation Systems as doing business as Albertson's, Inc." However, in the body of the petition
they noted that CT Corporation was Albertson's agent for service of citation. All parties
continued to name as a defendant CT Corporation as "d/b/a Albertson's, Inc.," and the trial court
dismissed appellants' claims against "CT Corporation Systems d/b/a Albertson's, Inc."
2. McBride's affidavit makes no reference to whether he intended to arrest appellants, but the
record contains no proof that Albertson's or McBride took any further action with respect to
appellants.
3. We note that no proof suggests whether or when he again reverted to his employed status.
4. Appellees rely particularly on Half Price Books I and Leake v. Half Price Books, Records,
Magazines, Inc., 918 S.W.2d 559 (Tex. App.--Dallas 1996, no writ) (Half Price Books II), both
arising out of the same facts. Although the court in Half Price Books I stated that the uniformed
off-duty police officer employed as a store security guard became an on-duty officer when he saw
a crime being committed, it held he was not entitled to summary judgment on his claim of
qualified immunity based on the record because he had not proven he carried out his duties in
good faith. See Half Price Books I, 883 S.W.2d at 377. No one disputed the fact that the officer
had seen a crime. On remand, in Half Price Books II, a party who had not participated in the first
appeal attempted to raise a factual challenge as to whether the officer had actually observed a
crime being committed. The court in effect held that because it had already decided the matter
on the undisputed record in the first appeal, the party had waived the issue by not raising it in the
first instance and the earlier ruling had become the law of the case. See Half Price Books II, 918
S.W.2d at 564. Here, appellants have not conceded the issue; whether McBride observed a crime
is very much in contention. See also Duran, 921 S.W.2d at 784-85 (summary judgment evidence
did not support Furr's contention that violation of law occurred).



ployer inquired into the
employee's background before hiring him. See King v. Associates Commercial Corp., 744
S.W.2d 209, 213 (Tex. App.--Texarkana 1987, writ denied). If the employer made an inquiry,
the question is then whether the inquiry was sufficient to constitute due care. See id.