## GARZA v. UNITED STATES FIDELITY & GUARANTY CO.

No. 12435.

Court of Civil Appeals of Texas.
San Antonio.

Sept. 24, 1952.

Rehearing Denied Oct. 15, 1952.

Rankin, Kilgore & Cherry, James E. Little, Edinburg, for appellant.

Paul Port, Houston, for appellee.

W. O. MURRAY, Chief Justice.

This is a workman's compensation case. Paulino Garza is the claimant, Edd M. Boler, doing business under the name of Boler Fruit and Vegetable Company, is the alleged employer, and United States Fidelity and Guaranty Company, the alleged compensation carrier.

The trial was to a jury and all questions were answered favorably to Paulino Garza, but, upon motion, notice and hearing, judgment was entered non obstante verdicto in favor of the insurance carrier, from which judgment Paulino Garza has prosecuted this appeal.

Three defenses were presented by appellee, to-wit:

(a) That appellant was not employed by its insured but was working for an independent contractor at the time he was injured.

(b) That appellant had filed his notice of injury and claim for compensation more than six months after the date of his injury without good cause for the delay, and

(c) That appellant was a farm laborer at the time of his injury.

We will first notice the second defense. Edd M. Boler was engaged, among other things, in the business of purchasing fruit and vegetables in the field, harvesting the same, hauling them to his shed, processing them and placing them on the market. On or about the time appellant received his injury, Edd M. Boler had purchased some ungathered citrus fruit on trees in Falfurrias, Texas, some seventy miles north of his shed, located at Pharr, Texas. Boler employed one Reyes Anaya, who had the use of a truck belonging to one R. A. Rumrall. Boler told Anaya to get a crew and go gather this fruit and bring it to the shed. He told Anaya to get American citizens to take with him as he would have to pass through a station up the road where the U. S. Government was checking for aliens. This Anaya did, and appellant was one of those taken to Falfurrias by Anaya. Anaya went by the shed where he picked up baskets, boxes, bags, ladders and other equipment belonging to Boler, which was customary. Appellant helped to load this equipment on the truck. Boler told Anaya that he did not want him to clean the trees but to gather fruit of only a certain size. This was determined by a process known as ringing the fruit.

Anaya proceeded to Falfurrias and he and the crew there gathered a truck-load of citrus fruit, loaded it on the truck, and then all got on the truck and started back to Pharr for the purpose of unloading the fruit at the shed. Before reaching the shed Anaya drove into a filling station, the roof of which was not high enough to clear his load, and appellant who was riding on top of the load was seriously injured. This injury occurred on February 5, 1949, and appellant did not file his claim with the Industrial Accident Board until November 2, 1950 about twenty-one months after he had received his injury. Appellant gave as his reason for not filing his claim sooner that he was in the hospital for nine months after the accident in a helpless condition; that for three months after leaving the hospital he was confined to his home.

On February 13, 1950, appellant entered into a written employment contract with the

law firm of Hardin and Little. This contract stated in part:

"(1) First Party, Paulino Garza, hereby retains and employs Second Party (Hardin and Little) for the purpose of prosecuting a claim on behalf of First Party against Boler Fruit and Vegetable Company of Pharr, Hidalgo County, Texas, for personal injuries sustained by First Party while in the employ of said Boler Fruit and Vegetable Company on or about February 5, 1949."

On the same day, Sid L. Hardin, senior member of the law firm of Hardin and Little, wrote to appellant's doctor who replied by letter of February 15, 1950, advising Mr. Hardin fully as to appellant's condition. Hardin also wrote Boler on February 13, 1950, giving him notice of the claim on Garza's behalf and stated, "Paulino Garza advises that on or about February 5, 1949, he sustained serious and permanent personal injuries while employed by you as a fruit harvester." By letter of June 16, 1950, Mr. Hardin again wrote Boler stating, "We have made careful search of the law on the case and have concluded that you are liable for damages to the injured man. For several weeks we have been attempting to work out a settlement with your insurance carrier—This is to advise you that suit will be filed on this case next week unless some satisfactory settlement is made." The insurance carrier referred to was the company handling public liability insurance on the truck and was not appellee. On August 25, 1950, appellant's attorneys, Hardin and Little, filed a common-law action in the District Court of Hidalgo County against Edd M. Boler and R. A. Sumrall, setting out a claim for damages in the sum of $76,000, based upon the injuries here involved. On February 15, 1951, prior to the date the present suit was filed, appellant's lawyers, Hardin and Little, also filed a common-law action for damages against R. A. Sumrall and Reyes Anaya as defendants, for damages in the same amount.

Thus it is seen that appellant had employed and had been represented by a law firm for some nine months before his claim was filed with the Industrial Accident Board. The attorneys contend the reason they did not sooner file the claim was that Edd M. Boler deceived them by telling them that Paulino Garza was not an employee of his and was not covered by workmen's compensation carried by him. Mr. Hardin testified by deposition that he relied partly upon Boler's representation and partly upon his knowledge that a member of a harvesting crew was an agricultural worker and not covered by workmen's compensation insurance. We here quote from Mr. Hardin's deposition in part:

"Q. The reason you did not handle his Workmen's Compensation Claim at the time it first came into the office, was what? Give me those again please. A. Well, Mr. Boler had stated that he did not have any compensation insurance on his harvesters, and then he denied that the man was even working for him or that he had ever harvested any fruit for him, and he said that he was just a hitch-hiker trying to get a ride back to the Valley, and then my thought was that the truck driver, or the owner of the truck, Mr. Sumrall, would be primarily liable, and that if he had any coverage that that would be the best way to handle it.

"Q. You knew at that time that in pursuance of a common law action against the third party, rather than pursuing a compensation claim as such, that an election of some nature must be made? A. Well, I don't know, as I recall it at that time but it would constitute some form of election.

"Q. Those matters that you have just covered were the reasons why you did not consider this a compensation claim in the preliminary stages? A. That is right. * * *

"Q. I don't know if you mentioned it or not, but the fact that harvesting employees generally were assumed, number 1, not to be employees, and number 2, it was the custom to consider them as agricultural workers that might be well exempt from the Workmen's Compensation Law? A. Yes, sir, I think that that is true.

"Q. That point was also in your mind? A. Yes, sir, those points were in my mind. * * *

"Q. Mr. Cherry, or whoever prepared the last pleading in this case, gives the impression, I think, from the representations I have read over here, or some of them, that there were not enough facts obtained from Paulino Garza at the beginning of this case to find out that it should be considered as a Workmen's Compensation Claim? A. I think that that is true.

"Q. You think that that is true? A. Yes, sir.

"Q. What facts were later found out that would change the picture? What facts didn't you know at the time? A. At the beginning Mr. Little investigated and worked on the thing for several weeks and I don't know when he came to the conclusion that it should be asserted as a compensation claim.

"Q. You don't know yet if that is the right move? A. No, sir, I don't know yet about that, but there is this: Paulino Garza was in a very bad shape. He had to have assistance to get in and out. One leg was shorter than the other and he could not hold his urine. He complained of being in pain all of the time. It was very difficult to get anything out of him.

"Q. It was mainly a legal question of whether it should be a compensation case or a common law case? A. I guess that that is true, but you have to have some facts before you reach a legal conclusion.

"Q. Just from what in this employment contract, you refer to a claim against Boler Fruit and Vegetable Company, and that was on February 13th, 1950? A. Yes, sir.

"Q. And it refers here to personal injuries sustained by such party while in the employ of Boler Fruit and Vegetable Company on or about February 5th, 1949, so that at that time Mr. Little knew the date of the accident, and he knew who was claimed to be the employer, and about the general nature of his injuries, you knew his condition generally. What more would be needed than that to file a claim for Workmen's Compensation if you considered it as such? A. Well, I did not consider it as a Compensation Claim after I had talked with Mr. Boler and from my general knowledge of the customs and practices here in the Valley, and I have had one or two clients who have been sued in the same kind of a deal, in which the truck insurance carrier made settlement, and after talking with Mr. Boler there was some doubt in my mind whether the man was working for him or what were the facts.

"Q. But the nature of the claim, as far as the facts are concerned,—whether it was compensation or not,—you pretty well knew from the beginning that it was really a question or issue of law involved here and not of facts as to whether this would be considered a common law action or a suit under the Workmen's Compensation Law? A. Yes, sir, but in reaching a legal conclusion you must have facts to aid you. In my opinion at that time it was not a compensation claim.

"Q. What facts didn't you have then that you got later, if any? A. Well, I didn't get any more because along the latter part of 1950 I was pretty well tied up with other things and I just lost complete track of this case, the filing of the compensation claim and Mr. Cherry getting into the picture, that all happened before I knew about it.

"Q. What facts did Mr. Little find out later that changed the picture? A. I don't know.

"Q. You never made the decision to go ahead under the Workmen's Compensation or not? A. No, sir, I did not make that decision.

"Q. You did not make the decision to go ahead and file claim with the Board?

"A. No, sir, I did not make that decision.

"Q. That was made by Mr. Little and the firm of Rankin, Cherry and Kilgore? A. I assume that it was.

"Q. They were handling the case then, were they not? A. They were assisting Mr. Little."

Hardin and Little dissolved partnership and Hardin in effect withdrew from the case and the law firm of Rankin, Kilgore and Cherry came into the case. James E. Little, the other member of the firm of Hardin and Little, did not talk to Edd M. Boler himself but gathered his information through Sid Hardin. Little said that the reason a claim was not filed with the Industrial Accident Board sooner was that Boler denied that appellant was his employee and said further that appellant was a hitch-hiker trying to get to the Valley. Little stated that when later Boler changed his position and took the position that appellant was covered by his workmen's compensation insurance then a claim was filed at once with the Board.

■ As a matter of law, good cause was not shown for failure to file a claim with the Industrial Accident Board within the six months allowed by law. We will pass over the one year that appellant did not file a claim before he employed lawyers, but after that time the record does not justify his waiting another nine months.

■ The contract which appellant signed with Hardin and Little and the letters written and received by Hardin show that they had been informed that Garza desired to press a claim against Edd M. Boler upon the theory that he had received an injury while employed by Boler. Hardin admitted that he knew that he could write to the Industrial Accident Board and find out whether Boler carried workmen's compensation insurance and if so what the provisions of his policy were. Hardin makes it plain that Boler did not tell him that he did not have any workmen's compensation insurance, but only that his shed hands were covered and not his field crews. Whether a claimant is the employee of the assured is quite often an issue in workmen's compensation cases. Diligence requires that attorneys employed make full investigation of all available evidence in determining such matters. Garza himself was in a position to tell his attorney under what conditions he was working at the time of the injury. Anaya, the truck driver and alleged independent contractor, was no doubt available to relate the facts. The other men working with appellant and riding on the truck with him were no doubt available, at least the contrary is not shown.

Notice had previously been filed with the Industrial Accident Board to the effect that Boler was a subscriber to workmen's compensation insurance, and thereafter all of his employees were conclusively presumed to know such fact. Section 3c of Article 8306, Vernon's Ann.Civ.Stats., provides:

"From and after the time of the receipt by the Industrial Accident Board of notice from any employer that the latter has become a subscriber under this law, all employes of said subscriber then and thereafter employed, shall be conclusively deemed to have notice of the fact that such subscriber has provided with the association for the payment of compensation under this law."

In Zurich General Accident & Liability Insurance Co. v. Walker, Tex.Com.App., 35 S.W.2d 115, 117, the court said:

"Defendant in error, being conclusively presumed at the time he was injured to have had notice of the fact that his employer had made provision for compensation insurance, cannot plead absence of actual knowledge as good cause for his failure to give notice of his claim and bring suit within the period required by the Compensation Law."

Our courts have not looked with favor upon the failure of an employed attorney's waiting for long periods to file their client's claim with the Industrial Accident Board. Petroleum Casualty Company v. Dean, 132 Tex. 320, 122 S.W.2d 1053; Great American Indemnity Co. v. Dabney, Tex.Civ.App., 128 S.W.2d 496; Consolidated Underwriters v. Vargas, Tex.Civ.App., 113 S.W.2d 922.

■ Appellant having failed to discharge the burden of showing that good cause existed for his failure to file a claim with the Industrial Accident Board for a period

of twenty-one months after he had received his injury, is not entitled to recover herein.

 Another reason why appellant cannot recover herein is that he filed a common-law action for damages. On August 25, 1950, appellant filed an action in the 93rd District Court of Hidalgo County, being suit No. B–17724, wherein Paulino Garza was plaintiff and R. A. Sumrall and Edd M. Boler were defendants, and on February 5, 1951, a second suit was filed in the 92nd District Court of Hidalgo County, being Cause No. A–8515, wherein appellant was again plaintiff and R. A. Sumrall and Reyes Anaya were defendants. The petitions show that both actions were for damages for the personal injuries alleged to have been suffered by appellant by reason of the accident of February 5, 1949, made the basis of this suit.

Section 6a of Article 8307, Vernon's Ann. Civ.Stats., provides, among other things, as follows:

> "Where the injury for which compensation is payable under this law was caused under circumstances creating a legal liability in some person other than the subscriber to pay damages in respect thereof, the employe may at his option proceed either at law against that person to recover damages or against the association for compensation under this law, but not against both, and if he elects to proceed at law against the person other than the subscriber, then he shall not be entitled to compensation under this law. * * *"

Appellant by electing to follow his common-law remedy to sue for damages, precluded himself from claiming an award under the Workmen's Compensation Act. Fort Worth Lloyds v. Essley, Tex.Civ.App., 235 S.W.2d 700.

 Appellant contends that we should not consider the above matter as it was not made in reply to any point made by appellant and appellee did not except to the judgment nor file cross-assignments or cross-points of error. Appellee did raise this question in its motion for judgment, and while the court did not expressly sustain this contention he set aside the verdict of the jury and rendered judgment in appellee's favor. Under such circumstances appellee was not required to except to the judgment or file cross-assignments or cross-points of error. LeMaster v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224; Rule 324, T.R.C.P.

Here appellee is not complaining of the judgment rendered by the trial court but merely citing the election of the complainant to follow a common-law remedy as another reason why the judgment of the trial court was a correct one.

The judgment is affirmed.