**Don H. WASSON, et ux, Appellants,**

**v.**

**Doug STRACENER, Individually and d/b/a Gil–Tex Pipeline Construction Company, Appellee.**

No. 9752.

Court of Appeals of Texas, Texarkana.

Jan. 30, 1990.

Rehearing Overruled Feb. 27, 1990.

Harry Lee Gillam, Jr., Baldwin & Baldwin, Marshall, for appellants.

James T. Foley, Foley & Boyd, Tyler, for appellee.

GRANT, Justice.

Don H. Wasson and his wife, Debra Kay Wasson, appeal from a summary judgment rendered in favor of Doug Stracener, individually and d/b/a Gil–Tex Pipeline Construction Company. The Wassons brought suit against Stracener for personal injuries to Don Wasson resulting from a truck accident.

The Wassons contend that the trial court erred in granting Stracener's motion for summary judgment because the trial court inferentially found material issues of disputed fact, because the Workers' Compensation Act does not bar this proceeding, because the release of Vernon Freeman does not bar this action, because Wasson's workers' compensation action does not bar this action and because Debra Wasson's claims are not barred.

In the early part of July, 1984, Don Wasson was hired as a welder's helper for Vernon Freeman. It is customary that a welder selects his own helper. Wasson was paid by Stracener and Stracener carried workers' compensation insurance on Wasson.

On July 5, 1984, Wasson, Freeman and others worked at Streetman, Texas. Freeman had picked up Wasson at his home, and they had arrived in Streetman in the middle of the morning. When the work was completed, Stracener told ˙ Wasson, Freeman and the others that they were to report for work at the Delhi Gas Plant in Tyler, Texas, at 8:00 a.m. on the next day. The welders and helpers left Streetman around 9:00 p.m. They stopped at the End Zone Club in Henderson, Texas, and after leaving there, they traveled to the Reo Palm Isle in Longview, Texas. They arrived at the Reo Palm Isle at approximately 11:30 p.m. where they drank beer and shot pool until about 1:30 or 2:00 a.m. Instead of going home when the Reo Palm Isle closed, the workers decided to go on to Tyler and sleep in their trucks at the job site until 8:00 a.m. Wasson was riding with Freeman in Freeman's vehicle. En route to Tyler, Freeman fell asleep at the wheel and ran off the road. Wasson was

severely injured, suffering spinal damage which left him a paraplegic.

Prior to the filing of the present case, Wasson entered into a settlement agreement with Freeman and signed a general release of Freeman on August 6, 1985. Wasson then sought to abate the proceedings against Stracener pending the resolution of his workers' compensation suit. On January 23, 1987, the motion to abate was granted and on the same day, Stracener's motion for summary judgment was overruled. However, several months later, Stracener reurged his summary judgment motion and on October 3, 1988, the trial court granted it.

In reviewing a summary judgment, we follow certain standards: (1) a movant has the burden to show that there was no issue of material fact and that the movant was entitled to judgment as a matter of law; (2) in deciding whether there is a dispute in a material fact issue, we take as true evidence favorable to the nonmovant; and (3) every reasonable inference is indulged in favor of the nonmovant and all doubts are resolved in his favor. *Wilcox v. St. Mary's University of San Antonio,* 531 S.W.2d 589 (Tex.1975); Tex.R.Civ.P. 166a.

■ Wasson cites a number of cases to support his contention that it was improper for the trial court to overrule Stracener's summary judgment motion and one year and eight months later to grant Stracener's summary judgment motion. *Garcia v. City of Lubbock,* 634 S.W.2d 776 (Tex.App.—Amarillo 1982, writ ref'd n.r.e.); *Turner v. County of Marion,* 549 S.W.2d 254 (Tex.Civ.App.—Texarkana 1977, writ dism'd); *F. & T. Development Co. v. Morris,* 248 S.W.2d 233 (Tex.Civ.App.—Fort Worth 1952, no writ). The principle set forth in these cases is that the denial of a motion for summary judgment is not reviewable and generally carries with it the inference that there are disputed issues of material facts.[1]

In the present case, we are not reviewing the trial court's denial of the motion for summary judgment; rather, we are reviewing the granting of the summary judgment. The trial court denied the motion for summary judgment on the same day that it granted the motion to abate because the trial court wished to wait for a determination of the workers' compensation action. According to Stracener, the trial court informed him that he should reurge the motion for summary judgment at a later time. The trial court's denial of the summary judgment was interlocutory in nature, and the trial judge was free to reconsider such a ruling at any time prior to a final judgment being entered and becoming final.

■ In a supplemental portion of the motion for summary judgment, Stracener pleads that the release of Freeman barred that action against Stracener. The release of Freeman contains the following language:

Don Howell Wasson does hereby release, fully & finally and discharge the said Vernon L. Freeman, Jr. and the Texas Farm Bureau Mutual Insurance Company, and just them, and them alone, from his claims and all liability for his damages and injuries; and Don Howell Wasson reserves unto himself his claims, demands, rights, damages, law suits, causes of action and injuries against all other persons, parties, individuals, corporations and companies.

The Texas Supreme Court held in *McMillen v. Klingensmith,* 467 S.W.2d 193 (Tex. 1971), that unless a party is named in a release, he is not released. The Supreme Court specifically held in *Knutson v. Morton Foods, Inc.,* 603 S.W.2d 805 (Tex.1980), that a settlement and release from an agent does not operate to release the principal under the doctrine of *respondeat superior.* Thus, the release could not be a proper basis for the granting of the summary judgment.

There are a number of factual defenses contended by Stracener, any one of which, if proven, would bar Wasson's recovery: (1) that Wasson made an election of remedies by pursuing a claim for workers' com-

---

1. A summary judgment may also be denied simply because it is not in proper form with proper supporting evidence as required by Tex.R.Civ.P. 166a.

pensation, (2) that Wasson is barred by the Workers' Compensation Act because he was an employee of Stracener and within the scope of his employment at the time of the occurrence in question, (3) that Freeman was not an employee of Stracener, but was an independent contractor and that Stracener was not negligent in hiring him as an independent contractor, and (4) that even if Freeman were an employee, he was not in the scope of his employment at the time of the occurrence.

■ Wasson contends that his filing a suit for workers' compensation was not an election of remedies that barred him from proceeding against Stracener under the common law. Wasson's workers' compensation claim was denied by the workers' compensation carrier, and it was further rejected by the trial court on the basis of a jury trial.

■ The doctrine of election of remedies is not looked upon with favor by the court when it results in harsh consequences, and generally Texas courts do not favor its extension. *Slay v. Burnett Trust,* 143 Tex. 621, 187 S.W.2d 377, 393 (1945); *Crabtree v. Burkett,* 450 S.W.2d 728 (Tex.Civ. App.—Beaumont 1970, no writ). The doctrine is used to prevent a double redress for a single wrong. *McCrary v. Taylor,* 579 S.W.2d 347 (Tex.Civ.App.—Eastland 1979, writ ref'd n.r.e.).

■ There is no showing that Wasson ever collected workers' compensation. In order that an election may take place, there must be two or more remedies available to the party to enforce a single claim. When there is but one way to obtain relief, a party cannot be said to have elected. *Delhi–Taylor Oil Corporation v. Gregg,* 337 S.W.2d 222 (Tex.Civ.App.—Austin 1960), *aff'd,* 162 Tex. 38, 344 S.W.2d 419 (1961). The doctrine of election of remedies is conditioned on the existence of two valid, available, and inconsistent remedies, and a mistaken belief that a party has a particular remedy and his efforts to enforce it is immaterial and does not constitute an election unless the remedy in fact existed. *Henson v. Grayford Oil (Oil & Gas En., Inc.),* 549 S.W.2d 7 (Tex.Civ.App.—Dallas

1977, writ ref'd n.r.e.). The doctrine is designed to prevent a party who has obtained a specific form of remedy from obtaining a different and inconsistent remedy for the same wrong. *Fina Supply, Inc. v. Abilene National Bank,* 726 S.W.2d 537 (Tex.1987).

■ In the present case, a trial court made a determination that Wasson did not have a remedy under the Workers' Compensation Act. There is no election when one first unsuccessfully pursues a remedy which proves unfounded. *Bocanegra v. Aetna Life Ins. Co.,* 605 S.W.2d 848 (Tex. 1980). There is some language quoted in the *Bocanegra* case from *Seamans Oil Co. v. Guy,* 115 Tex. 93, 276 S.W. 424 (Tex. Comm'n App.1925, opinion adopted), that states, "But where the inconsistency is in the remedies it is generally considered that there is no estoppel where the former suit was dismissed *without trial or before judgment."* (Emphasis added).

The language *before judgment* appears in a number of Texas cases referring to the making of election by pursuing inconsistent remedies; however, it appears in *dictum* and does not seem to be applicable to take-nothing judgments. For example, in the case of *Breland v. Guaranty Building & Loan Co.,* 119 S.W.2d 690 (Tex.Civ.App.— Fort Worth 1938, writ ref'd), a party pursued his remedy not only through trial, but through the court of last resort and failed because his remedy was barred by the statute of limitations. The appellate court ruled that a litigant supposition that he had a particular remedy, and his effort to enforce it, does not constitute an election of remedy unless the remedy in fact existed. In the case of *Schwarz v. National Loan & Investment Co.,* 133 S.W.2d 133 (Tex. Civ.App.—Dallas 1939, writ ref'd), the court quotes the following passage from 20 C.J. 21:

[T]he fact that party misconceives his right, or through mistake attempts to exercise a right to which he is not entitled, or prosecutes an action based upon a remedial right which he erroneously supposes he has, and is defeated because

of such error, does not constitute a conclusive election and does not preclude him from thereafter prosecuting an action based upon an inconsistent remedial right.

We have found no Texas workers' compensation case that is directly on point with the present case. Proceedings before the Industrial Accident Board have been determined not to constitute an election of remedies. *Poe v. Continental Oil & Cotton Co.*, 231 S.W. 717 (Tex.Comm'n App.1921, opinion adopted) (an attempt to obtain an adjudication before the Industrial Accident Board which was denied because the plaintiff had failed to apply within the prescribed time was construed not to be an election of remedies waiving his common law action because he had no valid or enforceable remedy before the Industrial Accident Board); *Employers' Liability Assurance Corp., Ltd. v. Miller*, 497 S.W.2d 122 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ) (an employer's action in filing a report of injury with the Industrial Accident Board for an employee does not constitute an election); *Rice v. Garrett*, 194 S.W. 667 (Tex.Civ.App.—Amarillo 1917, writ ref'd) (employee was not estopped from bringing his common law action because he presented a claim to the Industrial Accident Board).

In the case of *Hardin v. Rust*, 294 S.W. 625 (Tex.Civ.App.—Amarillo 1927, writ ref'd), the court held that a minor was not prohibited from bringing an action for negligence against a third party because he had received a small check from his employer's insurance carrier. On the other hand, it has been held that claiming and collecting under the Workers' Compensation Act constitutes an election of remedies. *Porter v. Downing*, 578 S.W.2d 460 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.) (an injured employee making a claim and accepting benefits under the Workers' Compensation Act cannot thereafter maintain a suit against a co-employee or employer on the basis of intentional injury); *Jones v. Jeffreys*, 244 S.W.2d 924 (Tex.Civ.App.—Dallas 1951, writ ref'd) (employee who filed a claim and accepted benefits under workers' compensation for injuries resulting from an assault upon the employee by his employer under a theory of accidental injuries was barred from recovering against the employer for actual damages on a theory of intentional wrong). In the present case, the summary judgment evidence does not show that Wasson received any type of workers' compensation benefits. In the case of *Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, the plaintiff was held not to have made an election of remedies where he settled with the workers' compensation carrier for $12,000 for lost wages and future impaired earning capacity resulting from an occupational injury. The court based its decision on a finding that the plaintiff lacked knowledge of whether the injury was occupational or nonoccupational.

There are a number of Texas cases in which the courts hold that an election to pursue a common law remedy precludes a worker from claiming an award under the Workers' Compensation Act. In these cases, the courts express a concern that when suit against a third party defendant is prosecuted first, the workers' compensation carrier may be deprived of the right of subrogation. The Supreme Court said in *Watson v. Glens Falls Insurance Company*, 505 S.W.2d 793 (Tex.1974), that the purpose of Section 6a of the Workers' Compensation Act (as it existed at that time) was to protect the injured worker's right to recover from a negligent third party and the carrier's right to recoup funds paid in response to the workers' compensation claim from the third party. The court in *Granite State Ins. Co. v. Firebaugh*, 558 S.W.2d 550 (Tex.Civ.App.—Eastland 1977, writ ref'd n.r.e.), held that Section 6a of the Workers' Compensation Act as amended in 1973 precluded a claimant from pursuing to a conclusion a third party claim and then seeking workers' compensation without accounting to the carrier for the sums recovered. *See also, Employers' Indemnity Corporation v. Felter*, 277 S.W. 376 (Tex. Comm'n App.1925); *Garza v. United States Fidelity & Guaranty Co.*, 251 S.W.2d 781 (Tex.Civ.App.—San Antonio 1952, writ ref'd n.r.e.); *Fort Worth Lloyds v. Essley*, 235 S.W.2d 700 (Tex.Civ.App.—

Galveston 1950, writ ref'd); *Freeman v. Federal Underwriters Exchange*, 155 S.W.2d 674 (Tex.Civ.App.—Beaumont 1941, no writ). However, an employee's recovery in a third party action did not waive his right to future medical expenses from the workers' compensation carrier and the carrier's subrogation rights in such a recovery extended only to the initial benefits paid under the terms of a compromise settlement. *Finch v. Texas Employers' Ins. Ass'n*, 535 S.W.2d 201 (Tex. Civ.App.—Texarkana 1976, writ ref'd n.r. e.).

The doctrine of election of remedies is applied only where the elements of estoppel are present or where inconsistency in claims amounts to stultification. *A. E. Swift & Sons, Concrete Contractors, Inc. v. Sam Sanders, Inc.*, 405 S.W.2d 402 (Tex. Civ.App.—Amarillo 1966, no writ). In the present case, the summary judgment proof does not show the element of detrimental reliance required for estoppel. Moreover, seeking a judicial determination concerning a fact situation in which there are factors pointing to different legal conclusions does not amount to stultification. In order for the election of remedies to apply, a party must have a clear understanding of the nature of the remedies between which the election is made. A party should not be barred from invoking an inconsistent remedy when he has pursued, even to an unfavorable judgment, a remedy which was not available because the facts turned out to be different from what he supposed them to be or the law applicable to the facts was found to be other than that supposed. *See* 25 Am.Jur.2d *Election of Remedies* § 22 (1966). We conclude that the summary judgment evidence does not show that Stracener is entitled to judgment on the basis of election of remedies.

■ Stracener argues that Wasson is barred by Article 8306, § 3(a) of the Workers' Compensation Act which states in part:

The employees of a subscriber ... shall have no right of action against their employer or against any agent, servant or employee of said employer for damages for personal injuries, ... but such em-

ployees ... shall look for compensation solely to the association, as the same is hereinafter provided for.

Tex.Rev.Civ.Stat.Ann. art. 8306, § 3(a) (Vernon Supp.1989).

There is no question that, if Wasson had accepted workers' compensation benefits or had successfully prosecuted his workers' compensation claim to judgment, he would have made an election of remedies, and this suit would be barred. *Hedgeman v. Berwind Railway Service Company*, 512 S.W.2d 827 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.).

The workers' compensation law was enacted for the purpose of providing death benefits or compensation for medical expenses for workers who experienced physical injuries while in the scope of their employment. *Artco–Bell Corp. v. Liberty–Mutual Ins. Co.*, 649 S.W.2d 722 (Tex.App. —Texarkana 1983, no writ).

Article 8306, § 3(a) must be read in conjunction with Article 8306, § 3a which is entitled "Waiver of common law or statutory right of action." The pertinent part of that section contains the following language:

An employee of a subscriber shall be held to have waived his right of action at common law ... to recover damages for injuries sustained *in the course of his employment* if he shall not have given his employer ... notice in writing that he claimed said right....

Tex.Rev.Civ.Stat.Ann. art. 8306, § 3a (Vernon 1967) (emphasis added). The summary judgment proof does not show that Wasson was in the course of his employment at the time of the injury; therefore, the Workers' Compensation Act would not bar a common law action against his employer.

■ In order for Wasson to recover in the suit, he must show that he was not an employee at the time of the occurrence, but that Freeman was an employee at that time. A subscribing employer and his insurer are exempt from common law liability on account of injuries arising out of the course of employment. *Paradissis v. Royal Indemnity Company*, 507 S.W.2d 526 (Tex.1974).

Stracener takes the position that Freeman was an independent contractor. Whether a worker is an employee or an independent contractor depends on whether the employer has the right to control the details of the work performed. *Turnbough v. United Pacific Ins. Co.*, 666 S.W.2d 489, 492 (Tex.1984). In determining whether a worker is an employee or an independent contractor, several factors must be considered: (1) the independent nature of the worker's business; (2) the worker's obligation to furnish necessary tools, supplies and material to perform; (3) the worker's right to control the progress of the work, except as to final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by time or by the job. *Texas Employers Insurance Association v. Bewley*, 560 S.W.2d 147 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ).

Stracener offered summary judgment proof that he considered Freeman to be an independent contractor, that Freeman furnished his own tools and equipment, that he did not supervise details of Freeman's work as to making up his tack or how he turns the pipe or whether he takes a section of pipe and puts it on his truck on the vice or whether he does it on the line, and that he had a right to inspect Freeman's work and to change it if necessary.

There is also considerable summary judgment proof indicating that Freeman was an employee. Stracener paid Freeman on an hourly basis, controlled Freeman's starting time, and permitted Freeman to have a helper who was also paid by Stracener on an hourly basis.

Freeman offered the following testimony in his deposition:

Q  Now, Vernon, as part of the transaction between you and Doug Stracener and Gil–Tex Pipeline Construction, when they pay you the $20.00 per hour for you and your truck and your rig, is that a manner whereby that Doug and Gil–Tex do not have to pay social security, withholding tax and worker's comp; is that correct?

A  Yes, sir. I, myself, am considered a subcontractor.

Q  That is just between you and Gil–Tex and Doug so that they don't have to pay the social security, withholding and worker's comp; isn't that it?

. . . .

Q  Did you personally feel that Doug Stracener and Johnny Dodson who is foreman and Gil–Tex Pipeline Construction when you were on the job such as the one at Tyler and Delhi Gas and the one down there at Streetman, Texas, that they had the right to come to you on the job there and tell you how they wanted the job done? They knew enough about welding that they had the right to come to you and tell you how they wanted it done?

A  Yes, sir.

Q  Okay. Did you feel like that the same parties had the right to tell you when to go to work?

A  Yes, sir.

Q  Did they also, the same parties, did they have the right to come and tell you when you could leave work?

A  Yes, sir.

Q  Did you feel like that they had the right to tell you when to go to lunch and come back from lunch?

A  Yes, sir.

Q  And even if necessary did you feel like they had the right to tell you how to get to a particular job out in the field?

A  Yes, sir.

Q  If there were any changes to be made on pipeline construction work like you all were hired to do out there, did you feel like that Doug Stracener, Johnny Dodson, Gil–Tex Pipeline Construction, had the right to come to you and say this is the way we want it done?

A  Yes, sir.

. . . .

Q  Okay. So if they saw anything or any changes that might be made, they have the right to come to you and say, let's do it this way, and you'll do what they tell you to do; is that right?

A   Yes, sir.   If they insist, yes, we will.

. . . .

Q   Vernon, if you got out there and did some of the things that Mr. Price was just asking you about and if either Delhi's people or Gil–Tex Pipeline or Doug Stracener or Johnny Dodson came along and they said to you and to Don, we feel like you've done that wrong, we want you to do it this way, would you or would you not do it?

A   I would do it, yes, sir.

Q   In fact anything that they tell you to do, if you didn't do it, then you wouldn't have a job very long with them thereafter, would you?

A   Possibly not.

Q   So they do have the right to control and say to you, if we want it done this way, then you're going to do it that way, aren't you?

A   Yes, sir.

Q   Because they're the boss, aren't they?

A   Yes, sir.

Doug Stracener testified to the following in his oral deposition:

Q   As far as the work that was done by such welders and helpers such as Vernon Freeman, Don Wasson, Jimmy Nelson, James Duke, did you feel like that you and your company had the right to tell them as to the work that they were doing, the way that it should be done?   In other words, if you came up and saw it wasn't being done like you wanted it done, that you could go and have that done the way you wanted it done?

A   We had the right.

. . . .

Q   Okay.   If you saw anything there on the job that you didn't feel like had been done right, for example a joint or a valve or something like that, that you then had the right to tell the welder and his helper, I want that taken out and I want it done such and such a way, as far as the right to do so?

A   Yes, sir.

. . . .

Q   Mr. Stracener, Mr. Price asking you there about, oh, turning pipe, some packing and putting on trucks and so forth like that and you said on some occasions, yes, you would get into supervising the detail as to how it was done; is that correct?   Did I understand you correctly, on some occasions?

A   Not in the welding of it, maybe the positioning we were going to try to do it in.

. . . .

Q   Later on, yes.

A   Okay.   What we were doing, we were fabbing up a big facility, and the more they welded, the bigger and longer this stuff got.   And I or Johnny or someone, probably might have measured it or might have said, let's leave this weld out where we can haul it on our truck, let's don't get it too long to where we can't haul it without a permit.   I don't know that we did that. I'm sure that it could have happened.

Wasson points to evidence showing that Stracener controlled Freeman's starting time, Freeman's positioning and measuring of the pipe, and whether certain welds would be left out.   He also had a right to approve or disapprove the details of the work.   We find that there is a material fact dispute over whether Freeman was Stracener's employee.

Even if the fact issue of whether Freeman was Stracener's employee were to be resolved in favor of Wasson, he would have the further burden of showing that Freeman was acting in that capacity at the time of the injury.   The record shows that Stracener did not control Freeman's point of departure for work, did not prescribe any specific routes to the job site and did not pay mileage to Freeman.   Freeman was paid, however, for one additional hour for servicing the truck and getting it and the tools to the job site.   This would be some evidence that he was in the scope of Stracener's employment at the time of the accident, and it is sufficient to raise a fact

issue on that point.[2]

■ If it were to be determined that Freeman was an independent contractor, then Stracener would not have had a duty to see that Freeman performed his work in a nonnegligent manner. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex.1985). However, Wasson correctly contends that if Freeman were to be found to be an independent contractor, Stracener could still be held liable for the negligent hiring of Freeman in that capacity because Texas recognizes a cause of action of the negligent hiring of an independent contractor. *King v. Associates Commercial Corp.*, 744 S.W.2d 209 (Tex.App.—Texarkana 1987, writ denied). One hiring an independent contractor may be held responsible for the contractor's negligent acts if the employer knew or should have known that the contractor was incompetent and a third person was injured because of the contractor's incompetency.

One factor that courts have looked to in determining whether an employee was negligent in hiring an independent contractor is whether the employer conducted an inquiry into the contractor's qualifications before hiring the contractor. *King v. Associates Commercial Corp.*, 744 S.W.2d 209. Wasson contends that Stracener was negligent in failing to check Freeman's driving record. Even if Stracener were found to have been negligent in his manner of selecting Freeman, this would not create liability unless there was also evidence that Freeman was incompetent. The record showed that Freeman had speeding viola-

tions and prior accidents. An employer is required to investigate his employee's competency to drive only if performance of the contract includes driving a vehicle. *Webb v. Justice Life Insurance Co.*, 563 S.W.2d 347 (Tex.Civ.App.—Dallas 1978, no writ). Since a part of Freeman's job was to get the truck and tools to the job site, his driving record would be pertinent to his employment. Thus, there is some summary judgment proof which raises a material issue of fact.

Because of these unresolved material fact issues, the summary judgment rendered against Don Wasson and Debra Wasson is neither authorized by the summary judgment procedure nor proper. *Smith v. Bolin*, 153 Tex. 486, 271 S.W.2d 93 (1954); Tex.R.Civ.P. 166a.

The summary judgment rendered by the trial court is reversed, and the cause is remanded.

## ON MOTION FOR REHEARING

In his motion for rehearing, Stracener strongly urges that Wasson and Freeman were so similarly situated that reasonable minds could not differ as to their mutual status. Thus, if Freeman were found to be an employee of Stracener acting within the scope of his duty at the time of the occurrence, then Wasson must have also been acting in the course and scope of his employment and would be barred from recovery.

We are bound by the standards for reviewing a summary judgment set forth in

---

2. Stracener contends that if Freeman was in the scope of his employment at the time of the accident, then so was Wasson. Stracener testifies generally about paying one hour's extra time as a benefit, but there is no evidence that Wasson was doing anything in furtherance of Stracener's business operation. Wasson testified as follows:

Q    Okay. And how much were you being paid during that period of time?
A    $6.00 an hour.
Q    Were you working out in the field or—?
A    Yes.
Q    —on a particular yard or—?
A    We were working out in the field.
Q    From one place to another?
A    Right.

Q    Were you paid travel time from the motel to the jobsite?
A    We were paid—I'd say yes.
Q    Okay. Do you know for sure?
A    Well, our time started at a certain time, and we usually got out to the field to go to work by 7:00 o'clock.
Q    Okay. And that was just during the slack time—?
A    Right.
Q    —when you were contracting out on your own?
A    Right.

This evidence does not show conclusively that Wasson was in the scope of his employment at the time of the accident and could not be the basis for the entry of a summary judgment.

the original opinion. Thus, in deciding whether there is a disputed fact, we must review the evidence accepting as true all evidence favorable to the nonmovant and indulging every inference in favor of the nonmovant and all doubts in the nonmovant's favor. The evidence shows that the company had a policy of paying employees one hour's extra time for the purposes of getting "their vehicles ready, gassed up and stuff." Stracener testified that he was paying Freeman as a welder for his work and for the use of his truck. Freeman was driving this truck, along with the welding equipment in the truck, to the next job site at the time of Wasson's injury. This, along with other evidence we have cited in our opinion concerning the element of control, constitutes enough evidence to create a fact issue as to whether Freeman was an employee acting within the scope of his employment at the time of the accident.

On the other hand, according to Stracener's testimony, Wasson as a welder's helper was not required to ride with the welder to the job. The evidence further shows that Wasson was asleep at the time of the accident. From this evidence, reasonable inferences can be drawn that Wasson did not share the duty of getting the truck and equipment to the next job site and therefore was not engaged in any work for Stracener. This is sufficient evidence to create a fact issue, independent of Freeman's status, as to whether Wasson was acting within the scope of his employment at the time of Wasson's injury. Thus, the factfinder could reasonably infer that Wasson's presence in the vehicle was not in performance of any duty relating to getting the truck and equipment to the work site.

The motion for rehearing is overruled.