**Opinion filed January 15, 2015**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00363-CV
_____

### UNION PACIFIC RAILROAD COMPANY, Appellant

### V.

### DUDLEY HAYNIE AND MASTER CORPORATION, Appellees

**On Appeal from the 358th District Court**
**Ector County, Texas**
**Trial Court Cause No. D-130,001-A**

## M E M O R A N D U M   O P I N I O N

This is an appeal of a summary judgment in a suit for damages arising from an accident wherein a train derailed after it collided with a tractor-trailer rig carrying a crane. Union Pacific Railroad Company sued the driver of the truck; the owner of the truck; the owner of the trailer; the owner of the crane, Master Corporation; Master's vice president, Dudley Haynie; and the trucking company that Master hired to transport the crane. The trial court granted summary judgment

in favor of Master and Haynie on all claims against them and severed those claims. We conclude that the trial court did not err when it ruled that Master and Haynie were entitled to judgment as a matter of law, and we affirm.

The summary judgment evidence shows that Master Corporation hired A.S. Manriquez Trucking, Inc. to move a "Grove" crane from one of its job sites to Master's yard. Craig Echols, Master's manager of construction, was responsible for securing third-party contractors to haul Master's equipment. Manriquez had transported equipment for Master in the past. The first time that Master contracted with Manriquez to haul equipment, Echols obtained a certificate of insurance and verified coverage. Echols was pleased with the past performance of Manriquez, and he personally retained Manriquez to transport the crane to Master's yard on July 16, 2010. After he retained Manriquez to haul the crane, Echols had no further contact with any representatives of Manriquez.

Manriquez did not haul the crane but, rather, apparently contracted with Jaime Flores Parra to transport it. According to Union Pacific's allegations, Jaime Parra used his 1990 Peterbilt truck and a lowboy trailer, owned by Efrain F. Parra, to move the crane. Union Pacific alleged that Jaime was neither licensed nor qualified as a motor carrier and that he was not entitled to operate commercial motor vehicles that transported cargo over public roads or highways in Texas. While he was moving the crane, Jaime attempted to cross railroad tracks. As he attempted to drive across the tracks, the lowboy trailer that Jaime was using became stuck on the railroad tracks. Jaime did not call 911, nor did he call the emergency number posted at the crossing, to notify anyone of the vehicle blocking the train tracks. Before Jaime could move the tractor-trailer rig carrying the crane, a Union Pacific train crashed into it. Several train cars and engines derailed, and the crane was a total loss.

2

Union Pacific initially asserted claims against the driver and against the owners of the truck, trailer, and crane. When Union Pacific sued Master, as owner of the crane, Master moved to join Manriquez as a third-party defendant and alleged that Master had retained Manriquez to move the crane and that Manriquez had employed the services of Jaime "unbeknownst to Master." In Union Pacific's first amended petition, it added Manriquez as a defendant and alleged that Manriquez was negligent when it hired Jaime and was vicariously liable for Jaime's actions because Manriquez retained control over the manner and methods of the work Jaime was to perform. Union Pacific sued Master and Haynie for negligent hiring and negligent entrustment, as well as negligence and negligence per se under several theories of vicarious liability.

Master and Haynie filed a traditional motion for summary judgment in which they argued that the evidence conclusively established that they owed no duty to Union Pacific, that their actions were not the proximate cause of the accident, and that they were not vicariously liable because Master did not hire Jaime or supervise the transport of the crane. Master and Haynie attached the affidavits of Haynie and Echols in support of their motion. In its response, Union Pacific objected to the affidavits as "nothing more than conclusory, self-serving statements of interested parties [that] constitute no evidence." Union Pacific argued that the evidence did not support a summary judgment and that fact issues remained. The trial court granted Master and Haynie's motion for summary judgment and ordered that Union Pacific take nothing against Master and Haynie. The trial court severed the claims against Master and Haynie, and Union Pacific filed this appeal.

In its first issue, Union Pacific argues that the trial court erred when it considered the affidavits of Haynie and Echols because the facts alleged were

incompetent summary judgment evidence and "nothing more than conclusory, self-serving statements of interested parties."

We review a trial court's ruling on the admissibility of summary judgment evidence for an abuse of discretion. *Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 567 (Tex. App.—Fort Worth 2008, pet. denied). When a trial court acts without reference to any guiding rules or principles, it abuses its discretion. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002). We will uphold the trial court's ruling if there is any legitimate basis in the record for an erroneous evidentiary ruling unless the error probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a)(1); *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 723 (Tex. 2003).

We first address Union Pacific's objection to certain statements in the affidavits that it claims were not based on personal knowledge; Union Pacific refers us to general "subjective statements about what [Haynie and Echols] 'understood' or 'believed.'" Affidavits supporting summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." TEX. R. CIV. P. 166a(f). A recitation that the facts are based on personal knowledge is insufficient if the affidavit fails to show a basis for the knowledge. *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008). "An affidavit containing conclusory and subjective determinations of fact may support a motion for summary judgment if the remaining statements contain sufficient factual information to sustain the movant's burden of proof." *First Nat'l Bank in Munday v. Lubbock Feeders, L.P.*, 183 S.W.3d 875, 881 (Tex. App.—Eastland 2006, pet. denied). A person's position or job responsibilities can peculiarly qualify him to have personal knowledge of facts and to establish how he learned of those facts. *Id.*

4

We find two such statements in the affidavits, and we will address each of them in turn. We first consider Echols's statement that he "understood and believed that Manriquez was a qualified carrier of property and had satisfied [state] requirements . . . and any pertinent [state and federal] requirements or regulations." We agree with Union Pacific that this statement is conclusory because there are no facts contained elsewhere in the affidavit to show why Echols believed Manriquez was a "qualified carrier." Because Echols did not explain how or why he believed that Manriquez was a qualified carrier, this evidence was not based on personal knowledge.

Next we consider Echols's and Haynie's identical statements in their respective affidavits that they "did not understand or know, or have reason to understand or know," the intended route, that Jaime was transporting the crane, or that he was not qualified. In Echols's position as manager of construction, and given his responsibility for securing third-party contractors to haul Master's equipment as well as being the person who engaged Manriquez to haul the crane, Echols was particularly qualified to have personal knowledge of facts related to third-party contractors hauling Master's equipment. However, other facts alleged in the affidavit support Echols's lack of knowledge or understanding. Echols stated that he did not meet Jaime until after the accident, had never engaged Jaime to transport equipment, was never informed by a representative of Manriquez that it hired third-party drivers, and could not find any reference to Jaime in past invoices to indicate the use of Jaime or any other third-party drivers. Thus, Echols's statement was supported by other facts contained in the affidavit.

Union Pacific also argued that the facts alleged in the Echols and Haynie affidavits were not competent evidence because they were self-serving statements of interested witnesses that could not be readily controverted. Union Pacific contends that, because Master and Haynie had the burden to establish as a matter

5

of law that there were no genuine issues of material fact, demonstrating a lack of knowledge on an issue was not sufficient to support summary judgment. Specifically, Union Pacific argues that the affidavits "do nothing more than show that they knew nothing and did nothing in regard to the transport of the crane other than to request that Manriquez haul the crane" and "attempt to absolve Haynie and Master from liability by pleading ignorance of facts about which they had a duty to inquire." Union Pacific makes similar arguments about several other statements that it contends are insufficient "to absolve Haynie and Master of their legal duty to make an investigation as to the qualifications and competency of Manriquez." If Union Pacific's true complaint is that the facts alleged are insufficient to establish that Master and Haynie discharged their duty to investigate Manriquez to determine whether it was competent to transport Master's equipment, the complaint goes to the merits of the case against *Manriquez* and not to whether the evidence offered established that *Master and Haynie* were entitled to summary judgment as a matter of law. The causes of action alleged against Master and Haynie do not require Master and Haynie to show that they sufficiently inquired into *Manriquez* and its ability to transport equipment for Master.

We have reviewed the affidavits and the objections, and the only statement that we see that was improper summary judgment evidence is Echols's statement that he "understood and believed" that Manriquez was qualified and had satisfied the relevant state and federal regulations. However, because the summary judgment did not turn on Master's investigation into Manriquez's qualifications, as discussed in Issue Two, if the trial court erred and considered this evidence, any such error was harmless. *See* TEX. R. APP. P. 44.1(a)(1). Union Pacific's first issue is overruled.

In its second issue, Union Pacific argues that summary judgment in this case was not proper. To be entitled to summary judgment, a defendant must either

6

negate an element of each of the plaintiff's causes of action or establish each element of its affirmative defense as a matter of law. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). We review a trial court's ruling on a traditional motion for summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We must determine whether the movant established that no genuine issue of material fact existed and that the movant was entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *Apcar Inv. Partners VI, Ltd. v. Gaus*, 161 S.W.3d 137, 139 (Tex. App.—Eastland 2005, no pet.).

To determine whether there is a genuine issue of material fact that precludes summary judgment, we take as true summary judgment evidence favorable to the nonmovant, indulge reasonable inferences in favor of the nonmovant, and resolve doubts in favor of the nonmovant. *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). "When the trial court does not specify the basis for its summary judgment, the appealing party must show it is error to base it on any ground asserted in the motion." *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). We consider only the grounds that "the movant actually presented to the trial court" in its motion. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996).

Union Pacific alleged that Master and Haynie were directly liable for the negligent hiring of Jaime as an independent contractor and for negligent entrustment when they entrusted the crane to Jaime. Union Pacific also alleged that Master and Haynie were vicariously liable for the actions of Jaime as a bailee and as a borrowed servant under the theory of respondeat superior. Master and Haynie challenged liability under each cause of action.

We will first consider Union Pacific's claim that Master and Haynie are vicariously liable for the actions of Jaime under a "borrowed servant" theory.

Master and Haynie argued in their motion for summary judgment that the evidence conclusively established that Jaime was not a borrowed servant of Master or Haynie.

The "employee of one employer may become the borrowed employee of another with respect to some activities," and "it is the *shift* of the right to direct and control the details of the work that transforms a general employee of one employer into a borrowed employee of another, rendering the new employer vicariously liable for the borrowed employee's actions." *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 537, 542 (Tex. 2002) (emphasis added). According to the Echols affidavit, Echols was responsible for securing third-party contractors to haul Master's equipment; he called Tony and asked him "to transport Master's 'Grove' crane from a Master job site" to Master's yard; Echols had no further contact with Tony or any representatives of Manriquez. Echols did not know what route would be taken to transport the crane to Master's yard, an indication that Master and Haynie lacked control over the details of the work. Moreover, Echols stated that he did not know that Manriquez had contracted with a third party to move the crane prior to the accident.

The only evidence offered by Union Pacific was the driving record of Jaime. In its response, Union Pacific argued that the affidavits were insufficient because the evidence is silent as to, among other things, who loaded the crane onto the trailer at the job site, who had the keys to the crane, and who inspected the trailer after the crane was loaded. However, even if there was evidence that a Master employee had the keys to the crane, drove the crane onto the trailer, and inspected the loaded trailer, this would not establish a shift from Manriquez to Master of control over the details of Jaime's work. *See Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 357 (Tex. 1998) (requiring independent contractor to comply

8

with standard safety practices and applicable laws does not impose an unqualified duty of care to ensure that contractor's employees did nothing unsafe).

The summary judgment evidence shows that neither Master nor Haynie exercised any actual control in this case. Master's employee contracted with Manriquez to transport the crane, and the lack of further dealings and communication between Echols and Manriquez is evidence of a lack of the right to control. Because of his position with Master, the fact that Echols was unaware that Manriquez had hired Jaime is sufficient to establish that there was not a shift in control over Jaime from Manriquez to Master.

Based on the foregoing, we must conclude that the summary judgment evidence conclusively established that Jaime was not a borrowed servant. Instead, the evidence shows that Master contracted with Manriquez to transport the crane and that Manriquez engaged Jaime as a subcontractor. Under these circumstances, we cannot conclude that liability for Jaime's actions should be imputed to Master and Haynie. Accordingly, it was not error to grant summary judgment on the ground that Jaime was not Master's borrowed servant.

We next consider Union Pacific's cause of action against Master and Haynie for negligently hiring "Jaime F. Parra . . . as an independent contractor." A claim for negligent hiring arises when there is a lack of the use of ordinary care when hiring an independent contractor. *Wasson v. Stracener*, 786 S.W.2d 414, 422 (Tex. App.—Texarkana 1990, writ denied). In their motion for summary judgment, Master and Haynie argued that they were not liable for the negligent hiring of Jaime as an independent contractor because they did not retain or hire Jaime to transport the crane. As the person who hires third-party contractors to haul equipment, Echols hired Manriquez to transport the crane from the Master job site to Master's yard. Echols first learned "that someone other than Manriquez had hauled the 'Grove' crane" when he arrived at the scene of the accident and saw

9

"Jaime Parra Trucking Co." on the doors of the truck. Echols further stated that "[o]nly Manriquez had Master's permission to haul the crane." Because the summary judgment evidence conclusively shows that Master and Haynie did not hire Jaime, it was not error to grant summary judgment in favor of Master and Haynie for negligent hiring.

Union Pacific also alleged that Master and Haynie were liable for negligent entrustment because they entrusted the crane to "Jaime F. Parra when [Haynie] and/or [Master] knew or should have known that Jaime F. Parra was an unlicensed, unqualified, incompetent[,] and reckless driver and knew that the crane was going to be transported on the public roadways." Master and Haynie argued in their motion for summary judgment that the evidence conclusively established that they did not "entrust[ ] their crane to Jaime Parra." As discussed above, the summary judgment evidence shows that Master hired Manriquez to haul the crane and did not know that Jaime was transporting the crane until after the accident. Because of Echols's position and duties, the evidence conclusively establishes that Master and Haynie entrusted the crane only to Manriquez. Accordingly, it was not error to grant summary judgment on Union Pacific's claim for negligent entrustment.

We next consider Union Pacific's claim that Master and Haynie were liable as bailors of the crane for the acts of Manriquez and Jaime as bailees. A bailor of a vehicle is only liable for the acts of the bailee if the bailor had control over the bailee's operation of the vehicle. *Bertrand v. Mut. Motor Co.*, 38 S.W.2d 417 (Tex. Civ. App.—Eastland 1931, writ ref'd); *see also Rollins Leasing Corp. v. Barkley*, 531 S.W.2d 603, 605 (Tex. 1975) ("[I]f the bailor cannot be held vicariously liable for the negligence of a bailee in custody of his chattel, then neither can the contributory negligence of that bailee be imputed to him . . . ."). Just as with the borrowed servant doctrine, the summary judgment evidence shows that Master and Haynie had no knowledge that Jaime was transporting the crane

10

and exercised no control over how Manriquez was transporting the crane, including whether it hired a third-party operator to transport the crane. Because the summary judgment evidence shows that Master contracted with Manriquez to move the crane and exercised no control over how the train was transported, Master and Haynie cannot be held vicariously liable for the negligence of a subcontractor whose existence was unknown to Master and Haynie. Accordingly, it was not error to grant summary judgment in favor of Master and Haynie on the theory that they were liable as a bailor of property.

After reviewing each ground raised in support of summary judgment, we conclude that the trial court did not err when it granted summary judgment in favor of Master and Haynie on all claims asserted against them. *See Star-Telegram*, 915 S.W.2d at 473. Accordingly, Union Pacific's second issue is overruled.

We affirm the judgment of the trial court.

JIM R. WRIGHT
CHIEF JUSTICE

January 15, 2015

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

11